1

KENNETH SULZER (SBN 120253)
ksulzer@constangy.com

2

STEVEN KATZ (SBN 139078)
skatz@constangy.com

3

SARAH KROLL-ROSENBAUM (SBN 272358)
skroll-rosenbaum@constangy.com

4

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
1800 Century Park East, 6th Floor

5

Los Angeles, CA  90067
Telephone:  310.909.7775

6

Facsimile:   424.276.7410

7

8

Attorneys for Defendant
AMN HEALTHCARE, INC.

9

10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| EVETTE OSUEGBU, individually and on behalf of all others similarly situated, and as a proxy of the State of California on behalf of aggrieved employees,<br><br>        Plaintiffs,<br><br>vs.<br><br>AMN HEALTHCARE, INC. and KAISER PERMANENTE INTERNATIONAL, and DOES 1-50,<br><br>        Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, AND 1453 (CLASS ACTION FAIRNESS ACT); DECLARATIONS OF SARAH KROLL-ROSENBAUM AND LISA LARSON; EXHIBITS IN SUPPORT** |

21

22

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO**

23

**PLAINTIFF EVETTE OSUEGBU AND HER ATTORNEYS OF RECORD:**

24

    PLEASE TAKE NOTICE that Defendant AMN Healthcare, Inc. ("AMN" or

25

"Defendant"), by and through undersigned counsel, hereby removes this action to this

26

Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  In support of such

27

removal, AMN states as follows:

28

## I. **SUMMARY**

1.  AMN Healthcare, Inc.'s subsidiary, AMN Services, LLC, employs qualified health care professionals in temporary assignments at health care facilities across California and the country.[1]  (Declaration of Lisa Larson ["Larson Decl."], ¶ 3.)

2.  On or about April 6, 2016, Plaintiff Evette Osuegbu ("Plaintiff") commenced the aforementioned action against Defendant in the Superior Court of California, County of Alameda, titled *Evette Osuegbu v. AMN Healthcare, Inc., et al.*, Case No. RG16810383 (the "State Court Action"). (Declaration of Sarah Kroll-Rosenbaum ("Kroll-Rosenbaum Decl.") ¶ 2, Ex. A.) Plaintiff served AMN Healthcare, Inc. with notice of this action via U.S Mail and electronic service to undersigned counsel on April 7, 2016. (Kroll-Rosenbaum Decl. ¶ 3.)  Defendant returned a Notice and Acknowledgement of Receipt to Plaintiff on April 26, 2016. (*Id*.)  Thus, pursuant to Cal. Civ. Proc. Code § 415.30, service was complete on April 26, 2016.  AMN filed an Answer on May 24, 2016.  (Kroll-Rosenbaum Decl. ¶ 4, Ex. B.)

3.  This Notice of Removal is timely filed within 30 days of effective service of process on AMN, which occurred on April 26, 2016.  (Kroll-Rosenbaum Decl. ¶ 5, Ex. A.)  *See* 28 U.S.C. 1446(b); Cal. Civ. Proc. Code § 415.30.

4.  AMN will serve written notice of the filing of this Notice of Removal on Plaintiff as required by 28 U.S.C. § 1446(d) and will file this Notice of Removal with

---

[1] Although Plaintiff has sued AMN Healthcare, Inc., she was employed by AMN Services, LLC during all periods relevant to this lawsuit.  AMN Healthcare, Inc. is the parent company of AMN Services, LLC and does not employ any individual who might fall within the definition of the Putative Class.  (Larson Decl. ¶ 3.)  For the sole purposes of this removal, references to employees of AMN herein means employees of AMN Services, LLC.

the clerk of the Superior Court of the State of California in and for the County of Alameda, as further required by that statute.

## II.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 84(a) and 1441(a) because the action was pending in the Alameda County Superior Court, which is within the territory of the United States District Court for the Northern District of California.

6.     Plaintiff brings this action on behalf of "[a]ll individuals who worked as a traveling nurse or like hourly position for either Defendant AMN and/or Defendant Kaiser in California at any time beginning four years before the filing of this Complaint" (the "Putative Class").  (Compl. ¶ 45.)

7.     Plaintiff's Complaint alleges seven claims on behalf of herself (and members of the Putative Class (the "Putative Class Members")) including: (1) failure to pay overtime compensation (*Id.* ¶¶ 47-52); (2) failure to pay for all hours worked (*Id.* ¶¶ 53-61); (3) failure to keep accurate payroll records (*Id.* ¶¶ 62-67); (4) failure to furnish accurate wage statements (*Id.* ¶¶ 68-76); (5) waiting time penalties (*Id.* ¶¶ 77-80); (6) unfair competition and unlawful business practices (*Id.* ¶¶ 81-90); and (7) statutory penalties pursuant to PAGA (*Id.* ¶¶ 91-102).

8.     Plaintiff seeks damages on behalf of herself and the Putative Class, including unpaid wages and unpaid overtime at the applicable overtime and double-time rate.  (Compl. Prayer for Relief.)  Plaintiff also seeks interest, restitution of all unpaid wages, and attorneys' fees and costs.  (*Id.*)  She further claims that she and the Putative Class are entitled to a number of statutory and civil penalties.  (*Id.*)

9.     This Court has original jurisdiction over this action under The Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d)(2). The district court has original jurisdiction over the action because the action is a class action in which at least one class member is a citizen of a state different from that of one of the Defendants, the purported class size is in excess of 100 members, less than

two-thirds of the Putative Class Members, in aggregate, are citizens of California, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(4), (d)(5)(B), and (d)(6). The action is therefore properly removable pursuant to 28 U.S.C. § 1441(a).

### A.    This Matter Was Brought As A Class Action.

10.    Plaintiff characterizes this lawsuit as a "class action and law enforcement action" seeking unpaid wages, premium wages, civil and statutory penalties, attorneys' fees and costs, and interest. (Compl. ¶ 1, Prayer for Relief.)

### B.    Diversity of Citizenship

11.    Plaintiff Evette Osuegbu alleges that she is a resident of the State of Illinois. (Compl. ¶ 21.)

12.    AMN is, and was at the time of the institution of this civil action, a corporation organized under the laws of the State of Nevada, having its principal place of business in California. (Larson Decl. ¶ 2.) As a result, Defendant is a citizen of Nevada and California. *See* 28 U.S.C. § 1332(c) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.")

13.    Plaintiff has named as defendants "DOES 1-50." Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join removal petition). Indeed, federal courts, unlike California state courts, do not recognize the existence of Doe defendants. *See, e.g., Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967). The existence of Doe defendants one through fifty, therefore, does not deprive this Court of jurisdiction. Further, pursuant to CAFA, AMN is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

///

1

2
**C.**      **The Number of Class Members Is 100 or Greater.**

3
14.      Plaintiff alleges that this action is filed on behalf of "All individuals who

4
worked as a traveling nurse or like hourly position for either Defendant AMN and/or

5
Defendant Kaiser in California at any time beginning four years before the filing of

6
this Complaint."  (Compl. ¶ 45.)

7
15.      During the four-year time period from April 6, 2012 to April 6, 2016,

8
AMN employed approximately 11,173 Putative Class Members.  (Larson Decl. ¶ 4.)

9
**D.**      **Less Than Two-Thirds of the Members of the Putative Class Are**

10
          **Citizens of California.**

11
16.      Of the 11,173 Putative Class Members, 8,759 (78.4%) of the individuals

12
reported to AMN that they reside in locations other than California.  (Larson Decl. ¶

13
5.)      Thus, only 2,414 (21.6%) of the Putative Class Members are citizens of

14
California.

15
**E.**      **The Amount In Controversy Exceeds CAFA's $5 Million Threshold.**

16
17.      Pursuant to CAFA, the claims of the individual members in a class action

17
are aggregated to determine if the amount in controversy exceeds the sum or value of

18
$5,000,000.00, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(6).  Congress

19
intended for federal jurisdiction to be appropriate under CAFA "if the value of the

20
matter in litigation exceeds $5,000,000.00 either from the viewpoint of the plaintiff

21
or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g*.,

22
damages, injunctive relief, or declaratory relief)."  Senate Judiciary Report, S. REP.

23
109-14, at 42.

24
18.      To satisfy its burden that removal of this action is proper, a defendant

25
only has to demonstrate that it is "more likely than not" that the amount in controversy

26
exceeds the jurisdictional threshold of $5,000,000 in aggregate.  *Abrego v. The Dow*

27
*Chem. Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006).  Where "the plaintiff fails to plead

28
a specific amount of damages, the defendant seeking removal must prove by a

preponderance of the evidence that the amount in controversy requirement has been met." *Bonnel v. Best Buy Stores, L.P.*, 881 F. Supp. 2d 1164, 1167 (N.D. Cal. 2012), *citing Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Fong v. Regis Corp.*, 2015 WL 26996 *2 (N.D. Cal. 2012), *citing Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Further, "[w]here a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met." *Korn, supra*, 537 F. Supp. 2d at 1205, *citing Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000).

19.   Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA or removal to federal court should be resolved in favor of federal jurisdiction. *See., e.g.,* S. REP. 109-14, at 42 ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."); *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

20.   While AMN denies Plaintiff's factual allegations and denies that Plaintiff or the Putative Class she purports to represent are entitled to any relief,[2] it is evident

---

[2]   This Notice of Removal discusses the nature and amount of damages placed at issue in the Complaint.  AMN's calculations of potential damage amounts are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  AMN maintains that Plaintiff's claims are without merit and that AMN is not liable to Plaintiff or any other Putative Class Member.  AMN specifically denies that Plaintiff has suffered any damage as a result of any act or omission by AMN.  No statement or reference

that, when the maximum potential values of the claims of Plaintiff and the Putative Class Members are aggregated, the allegations within Plaintiff's Complaint put into controversy an amount in excess of $5,000,000. *See Rhoades v. Progressive Cas. Ins. Co.*, 410 Fed. Appx. 10, 11 (9th Cir. 2010) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") *quoting Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010).

21.     As stated above, Plaintiff's Complaint purports to allege the following claims on behalf of herself and the Putative Class: (1) failure to pay overtime compensation (*Id.* ¶¶ 47-52); (2) failure to pay for all hours worked (*Id.* ¶¶ 53-61); (3) failure to keep accurate payroll records (*Id.* ¶¶ 62-67); (4) failure to furnish accurate wage statements (*Id.* ¶¶ 68-76); (5) waiting time penalties (*Id.* ¶¶ 77-80); (6) unfair competition and unlawful business practices (*Id.* ¶¶ 81-90); and (7) statutory penalties pursuant to PAGA (*Id.* ¶¶ 91-102).  Plaintiff alleges that her claims are typical of the claims of the Purported Class Members.  (*Id.* ¶ 46.)

22.     The 11,173 Putative Class members employed by AMN who worked assignments at any time during the four year period prior to the filing of the Complaint each worked an average of 12.9 weeks during each assignment.  (Larson Decl. ¶ 4.) The average regular rate that Putative Class Members received was $24.38 per hour. (*Id.*)  Accordingly, and without conceding that Plaintiff's claims are typical of (or common to) the Putative Class, AMN assumes for purposes of this removal that the typical Putative Class Member worked a total of 12.9 weeks in the four years prior to the filing of the Complaint, and that the "typical" Putative Class Member's regular rate of pay was $24.38 per hour.

_____

contained herein shall constitute an admission of liability or a suggestion that Plaintiff or any other Putative Class Member will or could actually recover these damages based upon the allegations contained in the Complaint or otherwise.

23.   There were approximately 92,655 wage statements issued to Putative Class Members for 8,055 work assignments during the period from April 6, 2015 to April 6, 2016.  (Larson Decl. ¶ 7.)

24.   Based on the number of Putative Class members and their average rate of pay, as well as the class allegations in the Complaint and damages sought on behalf of the class, damages claimed by Plaintiff and the Putative Class would exceed $5,000,000 as follows:

a.   Plaintiff's First Claim for Failure to Pay Overtime Compensation:  In her first claim, Plaintiff seeks unpaid overtime wages pursuant to California Labor Code §§ 510, 515.5, 1194, and 1198 *et seq*. Specifically, Plaintiff alleges that AMN failed to pay her and other traveling nurses at the premium rate of pay for hours worked greater than eight and twelve in a day.  (Compl. ¶¶ 49-50.)  California Labor Code § 510 provides that work in excess of eight hours per day and/or 40 hours per week and/or for the first eight hours of the seventh day of work should be compensated at no less than one and one-half (1.5) times the regular rate of pay for the employee.  California Labor Code § 510 provides that work in excess of twelve hours per day should be compensated at no less that two (2) times the regular rate of pay for the employee.  Plaintiff does not allege how many overtime hours Putative Class Members were not paid.  However, she alleges that Putative Class Members were regularly scheduled to work twelve (12) hour shifts, four or more days per week.  (Compl. ¶ 30.)  She also alleges that traveling nurses routinely work one to three hours past their allotted twelve hour shifts.  (*Id.* ¶¶ 30-41.)  She explains that working an hour and a half past a scheduled shift would be typical.  (*Id.* ¶ 37.)  She also claims that supervisors refuse to approve this double-time, and thus, seeking approval for double-time is a "futile

8

exercise." (*Id.* ¶ 40.)  Plaintiff alleges that she and other Putative Class Members are entitled to recover pre-judgment interest "on wages earned, but not paid every pay period." (Compl. ¶ 51.)  Thus, if Putative Class Members each worked a single 12.9 week assignment and worked an hour and a half past their scheduled twelve hour shifts, four days per week during their assignment, they would be entitled to six hours per week of double-time pay at twice the regular rate of pay.  Therefore, under Plaintiff's theory of the case, the potential amount in controversy is: **$42,167,170.15** (*i.e.* 2 times the average hourly rate of $24.38 per hour equals a double-time rate of $48.76, multiplied by six hours of alleged unpaid double-time per week, multiplied by 12.9 weeks per assignment multiplied the number of Putative Class Member (11,173) = $42,167,170.15).

    b.  <u>Plaintiff's Fourth Claim for Failure to Furnish Accurate Wage Statements</u>:  In her fourth claim, Plaintiff seeks statutory penalties for AMN's alleged failure to provide accurate wage and hour statements in violation of California Labor Code § 226.  (Compl. ¶¶ 68-76.)  Under Section 226(e), an injured employee can recover actual damages or penalties of $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent period (up to an aggregate penalty of $4,000) for a knowing and intentional violation.  Cal. Labor Code § 226(e).  The statute of limitations for a claim under § 226(e) is one year.  Cal. Code of Civ. Proc. § 340(a).  Plaintiff alleges that she and other Putative Class Members are entitled to recover pre-judgment interest "on wages earned, but not paid every pay period." (Compl. ¶ 51.)  In the one year prior to the filing of the Complaint (*i.e.*, April 6, 2016), Putative Class Members had 8,055 assignments in California during which they received a total of

approximately 92,655 wage statements.  Assuming that each of these wage statements contained inaccuracies, penalties would total **$8,862,750.00** (i.e. 8,055 initial violations x $50 + 84,600 subsequent violations x $100).

c.   <u>Plaintiff's Fifth Claim for Waiting Time Penalties</u>:  In her fifth claim, Plaintiff seeks continuation wages for a period of 30 days, pursuant to California Labor Code §§ 201-203.  (Compl. ¶¶ 77-80.)  The statute of limitations for Plaintiff's claim under California Labor Code § 203 is generally three years based on a claim of unpaid wages.  *See* Cal. Labor Code § 203 and Cal. Civ. Proc. Code § 338.  Under Section 203, terminated employees who are not paid all wages owed at the time of separation from employment may recover a penalty that is equal to their daily wage up to a maximum of 30 days.  Cal. Labor Code § 203. During the period from April 6, 2013 to April 6, 2016, AMN employed approximately 9,247 Putative Class members at an average hourly rate of at least $24.38 per hour.  (Larson Decl. ¶ 6.)   Assuming these Putative Class Members worked a twelve-hour work day, the average daily wage would be $341.32 ($24.38 multiplied by 8 regular hours plus $24.38 multiplied by 4 overtime hours).  Assuming that each of the 9,247 Putative Class Members concluded a single temporary assignment and could recover the maximum waiting time penalty of 30 days of wages ($10,239.60 (i.e. $341.32 x 30 days)), the total amount in controversy for this claim would be **$94,685,581.20** (i.e. $10,239.60 x 9,247).

d.   <u>Plaintiff's Seventh Claim for Statutory Penalties Pursuant to PAGA</u>: In her seventh claim, Plaintiff seeks statutory penalties pursuant to the Private Attorneys General Act of 2004, California Labor Code §§ 2698-99.  (Compl. ¶¶ 91-102.)  She seeks penalties for violations of

10

California Labor Code §§ 221-223, 226, 510, 1174, 1194, and 1198. Thus, Putative Class Members would potentially be eligible to recover penalties up to the following amounts:

(1) under §§ 221-223 for unlawful withholding of wages, **$25,325,440.83** (pursuant to the penalty provided under § 225.5, $100.00 for each initial violation (8,055 initial violations) and $200.00 for each subsequent violation (84,600 subsequent violations), plus 25% of the amount unlawfully withheld ($24.38/hr x 2 (double overtime) x 6 hrs/week x 12.9 weeks/assignment x 8,055 assignments x 25%));

(2) under § 226 for failure to provide itemized wage statements, **$8,862,750.00** (pursuant to the penalty under § 2699(f), $50.00 for each aggrieved employee per pay period for the initial violation (8,055 initial violations) and $100.00 per pay period for each subsequent violation (84,600 subsequent violations);

(3) under § 510 for failure to pay overtime **$17,725,500.00** (pursuant to the penalty under § 2699(f), $100.00 for each aggrieved employee per pay period for the initial violation (8,055 initial violations) and $200.00 per pay period for each subsequent violation   (84,600 subsequent violation));

(4) under § 1174 for failure to maintain payroll records, **$4,027,500** (pursuant to the penalty under § 1174.5 of $500 x 8055 work assignments);

(5) under § 1194 for failure to pay minimum wages **$30,399,763.32** (pursuant to the penalty under § 1194, the amount of improperly withheld wages (i.e. $24.38/hr x 2 (double overtime) x 6 hrs/week x 12.9 weeks/assignment x 8055 assignments));

(6) under § 1198 for maximum hours of work, **$17,725,500.00** (pursuant to the penalty under § 2699(f), $100.00 for each aggrieved employee per pay period for the initial violation (8,055 initial violations) and $200.00 per pay period for each subsequent violation (84,600 subsequent violations)).

Thus, the penalties that could potentially be recoverable by the Putative Class pursuant to Plaintiff's claims under PAGA total **$26,016,613.54** ($104,066,454.15 x 25% of total recovery to Putative Class Members pursuant to California Labor Code § 2699(i)).

e.  <u>Plaintiff Also Seeks Recovery of Attorneys' Fees</u>.  Even though Plaintiff's potential recovery on her class claims is more than enough to meet CAFA's amount in controversy requirement, AMN is also permitted to include Plaintiff's potential recovery of attorneys' fees to show that the amount in controversy has been met.  Where a plaintiff seeks to recover attorneys' fees provided for by statute, these fees are included in the amount in controversy to reach CAFA's $5,000,000 minimum.  *Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. 2015), *citing Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).  In her Complaint, Plaintiff seeks attorneys' fees to the fullest extent allowable or required by law, as set forth more fully above.  (*See* Compl. Prayer for Relief.)  Assuming Plaintiff can recover on her claims, she would most likely assert entitlement to attorneys' fees of at least 25% of the total recovery.  Indeed, it is well established in the Ninth Circuit that the benchmark for setting attorneys' fees in the class action context is 25% of the common fund. *See Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 260 (N.D. Cal. 2015), *citing Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D.

Cal. 2001).  Based on the above estimated amounts for Plaintiff's claims, which total $171,732,114.89, Plaintiff's expected recovery in attorneys' fees would be at least **$42,933,028.73**.

25.  <u>Summary of Amount in Controversy.</u>  Although AMN denies Plaintiff's factual allegations or that she or the Putative Class she purports to represent are entitled to the relief for which she has prayed, based on Plaintiff's allegations and prayer for relief, the amount in controversy clearly exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2).  Based on the very conservative calculations outlined above, the total amount in controversy is as follows: (a) unpaid overtime wages – at least **$42,167,170.15**; (b) penalties for failure to furnish accurate wage statements – at least **$8,862,750**; (c) waiting time penalties – at least $**94,685,581.20**; (d) penalties pursuant to PAGA – at least **$26,016,613.54**; and (e) attorneys' fees – at least **$42,933,028.73**.  These amounts total **$214,665,143.62**, which far exceeds the $5 million dollar threshold amount required by CAFA.

26.  For all of the foregoing reasons, Defendant respectfully submits that the State Court Action is removable to this Court under 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

WHEREFORE, Defendant AMN Healthcare, Inc. requests that this action stand and remain removed from the Superior Court to this Court.

Dated:  May 25, 2016          CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By: /s/ Sarah Kroll-Rosenbaum
Sarah Kroll-Rosenbaum
Attorneys for Defendant
AMN Healthcare, Inc.