1  KENNETH SULZER (SBN 120253)
   ksulzer@constangy.com
2  STEVEN KATZ (SBN 139078)
   skatz@constangy.com
3  SARAH KROLL-ROSENBAUM (SBN 272358)
   skroll-rosenbaum@constangy.com
4  CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
   1800 Century Park East, 6th Floor
5  Los Angeles, CA  90067
   Telephone: 310.909.7775
6  Facsimile:  424.276.7410

7
   Attorneys for Defendant
8  AMN HEALTHCARE, INC.

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12 EVETTE OSUEGBU, individually and
   on behalf of all others similarly situated,   Case No.
13 and as a proxy of the State of California
   on behalf of aggrieved employees,             **DECLARATION OF SARAH KROLL-**
14                                                **ROSENBAUM IN SUPPORT OF AMN**
           Plaintiffs,                            **HEALTHCARE, INC.'S NOTICE OF**
15                                                **REMOVAL**
   vs.
16
   AMN HEALTHCARE, INC. and
17 KAISER PERMANENTE
   INTERNATIONAL, and DOES 1-50,
18
           Defendants.
19

20

21

22
           I, Sarah Kroll-Rosenbaum, declare as follows:
23
           1.    I am Senior Counsel at the law firm Constancy, Brooks, Smith &
24
   Prophete, LLP, attorneys of record for Defendant AMN HEALTHCARE, INC.  I
25
   am admitted to practice in the State of California and the United States District
26
   Court for the Northern District of California.  Except as may be expressly noted
27
   below, I have first-hand knowledge of the facts set forth herein.
28

*Draft – Privileged and Confidential*
*Attorney Work Product*

2.     On or about April 6, 2016, Plaintiff Evette Osuegbu ("Plaintiff")
commenced the aforementioned action against Defendant in the Superior Court of
California, County of Alameda, titled *Evette Osuegbu v. AMN Healthcare, Inc., et al.,*
Case No. RG16810383 (the "State Court Action").  Attached hereto as Exhibit A is a
true and correct copy of the Summons and Complaint.

3.     Plaintiff served AMN Healthcare, Inc. with notice of this action via U.S.
mail and electronic service to the undersigned counsel on April 7, 2016.  Defendant
returned a Notice and Acknowledgement of Receipt to Plaintiff on April 26, 2016.

4.     On May 24, 2016, the AMN filed an Answer to the Complaint. A
true and correct copy is attached hereto as Exhibit B.

5.     This Notice of Removal is being filed on May 25, 2016, within 30 days
of the date the Summons and Complaint were served on Defendants, April 26, 2016.
It is therefore timely filed pursuant to 28 U.S.C. § 1446(b).

I declare under penalty of perjury under the laws of the United States of
America and the State of California that the foregoing is true and correct to the best
of my knowledge and belief and that this declaration was executed this 25th day of
May, 2016 at Los Angeles, California.


                                    s/Sarah Kroll-Rosenbaum
                                    Sarah Kroll-Rosenbaum

3925314v1 DECLARATION OF SARAH KROLL-ROSENBAUM ISO AMN'S NOTICE OF REMOVAL

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMN Healthcare, Inc., and Kaiser Permanente International, and Does 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Evette Osuegbu, individually and on behalf of all others similarly situated, and as a proxy of the State of California on behalf of aggrieved employees

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
FILED
ALAMEDA COUNTY

2016 APR -6 PM 3: 12

CLERK OF THE SUPERIOR COURT
H. SALCIDO, DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Rene C. Davidson Courthouse, 1225 Fallon St., Oakland, CA 94612

**CASE NUMBER:** *(Número del Caso):* RG 16 8 10388

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joshua Konecky, 2000 Powell St., Suite 1400, Emeryville, CA 94608; (415) 421-7100

DATE: 4/6/16          Clerk, by **M. Salcido** / Chad Finke , Deputy
*(Fecha)*             *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

*14157975*

FILED
ALAMEDA COUNTY

2016 APR -6 PH 3: 11

CLERK OF THE SUPERIOR COURT
BY_____
                    DEPUTY

Joshua Konecky, SBN 182897
jkonecky@schneiderwallace.com
Nathan Piller, SBN 300569
npiller@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiffs

THE SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

RG16810383

| | |
|---|---|
| Evette Osuegbu, individually and on behalf of all others similarly situated, and as a proxy of the State of California on behalf of aggrieved employees, | CLASS ACTION COMPLAINT; LAW ENFORCEMENT ACTION |
| Plaintiffs, | |
| vs. | (1) COMMON LAW; |
| AMN HEALTHCARE, INC., and KAISER PERMANENTE INTERNATIONAL, and DOES 1-50, | (2) CALIFORNIA LABOR CODE; (3) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and |
| Defendants. | (4) CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200, *et seq.* |
| | JURY TRIAL DEMANDED |

Plaintiff Evette Osuegbu, by and through her undersigned attorneys, hereby brings this Class Action Complaint and Law Enforcement Action against Defendants AMN Healthcare, Inc. and Kaiser Permanente International (collectively, "Defendants") and alleges as follows:

CLASS ACTION COMPLAINT
*Osuegbu, et al. v. AMN Healthcare, Inc., et al.*

BY FAX

## I.   NATURE OF THE CASE

1.     This is a class action and law enforcement action arising out of Defendants' failure to pay their traveling nurses all the wages they are owed, and failure to compensate them for overtime, including double time. Defendants have engaged in a common scheme of routinely requiring and/or suffering and permitting the traveling nurses to work in excess of 12 hours per day without compensating them at the statutorily-mandated double-time rate, and have failed to compensate the traveling nurses at all for discrete periods of work.

2.     Defendants employ hundreds of traveling nurses in California. Traveling nurses travel throughout the country—including in California—working at various hospitals and health systems with which Defendant AMN contracts. They typically work at a location for approximately 3 months before AMN assigns them to a new location. Defendant Kaiser is one of the health care providers that jointly employs traveling nurses with Defendant AMN.

3.     For example, traveling nurses working for Defendants AMN and Kaiser—such as Plaintiff Osuegbu—are typically scheduled to work four 12-hour shifts per week. However, Defendants have routinely required and/or suffered and permitted Ms. Osuegbu and the other traveling nurses to work well in excess of 12 hours per day without paying them at all for hours in excess of 12 per day, much less at their statutorily mandated double-time rate of compensation.

4.     As a matter of policy and practice, Defendants have routinely required traveling nurses to attend staff meetings ("huddles") and individual meetings with supervisors at the beginning of their 12-hour shifts. During these mandatory meetings, Defendants' managers and supervisors discuss safety, provide tutorials for using medical devices and other products, and give motivational speeches. While these meetings are scheduled to last only 15 minutes, they routinely last 30 minutes to an hour. As a result, traveling nurses are routinely behind schedule from the start of their shifts.

5.     In addition, the traveling nurses—including Ms. Osuegbu—are and at all relevant times have been responsible for "handing off" their patients to the next shift of nurses who will be treating their patients. These hand-offs must occur at the end of the traveling nurses' shifts because

their purpose is to prepare the nurse who will be treating the patient during the next shift for his or her assignment. Typically, "hand-offs" have required visiting with the nurse assigned to work the next shift and each of the approximately 5 patients to whom the traveling nurses have been assigned, checking the patients' vital signs, updating records, filling out status reports, and then briefing the nurse assigned to work the next shift on the patients' health history, diagnosis, and plan of care, among other information. "Handing-off" 5 patients to the nurse working the next shift is expected to take at least 1 hour, but can take as long as 2 or more hours.

      6.    Defendants require traveling nurses to "hand-off" their patients to the next nurse who will be treating the same patients *after* that nurse completes his or her daily "huddle" and individual meeting with supervisor(s).

      7.    Even though the "huddles" and other meetings routinely last 30 minutes to an hour (rather than the allotted 15 minutes), and the "hand-offs" typically take at least an hour to be completed, Defendants build an overlap of only 30 minutes into the nurses' shifts. As a result, traveling nurses routinely must wait 15-45 minutes for the next shift's meetings to conclude before beginning the "hand-off" process. In addition, because the traveling nurses cannot begin the 1 or more hour handoff process until the next shift's huddle and other meetings conclude, the traveling nurses routinely do not start the "hand-off" process until after their 12 hour shifts are scheduled to conclude.

      8.    For example, a traveling nurse's shift may be scheduled to conclude at 7:45 p.m., while the next shift is scheduled to begin at 7:15 p.m. Because the next shift's "huddles" and other meetings would often not conclude until approximately 8:15 p.m, the traveling nurses on the previous shift would not be able to begin the hour-long process of handing off their patients to the next shift until 8:15 p.m. By the time the hand-off process would be completed by approximately 9:15 p.m., the traveling nurses on the prior shift would have worked approximately an hour-and-a-half beyond their pre-scheduled shift completion time, or 13.5 hours, despite being scheduled to work a 12 hour shift.

9.     In addition, Defendants assign the traveling nurses so many patients (5 or more per shift) and such a heavy workload (consisting of duties including, but not limited to: taking patient pulses, samples, temperatures, and blood pressures; writing records; filling out patient charts; providing pre- and post-operation care; monitoring and administering medication and intravenous infusions; "handing-off" patients to the next shift of nurses; performing physical exams and health histories; providing wound care; provide healthcare counseling and education to patients; and direct other healthcare personnel, among other duties) that they typically cannot complete all of their duties within the pre-allotted 12 hour shift time.

10.     Defendants require that the traveling nurses obtain a certification from the "lead nurse" or other supervisor to approve any double time. As a result, the traveling nurses—who are non-union, unlike the other nurses who work for Defendant Kaiser—must ask the lead nurses or other supervisors to sign off on their timecards for time worked in excess of 12 hours in a workday. However, hospital supervisors working for Defendant Kaiser and other hospitals to which traveling nurses have been assigned routinely have refused to approve this double-time. When traveling nurses have sought payment, Defendants have refused, on the basis that the supervisor did not approve the double time. As a result Defendants' consistent practice of not approving payment of overtime and double time, reporting the total hours worked has become futile. Thus, Defendants have required and/or suffered and permitted the traveling nurses to work without pay for time reflected on their time cards as well as for time that is not recorded anywhere. Despite several complaints by Ms. Osuegbu, Defendants have not taken any action to ensure that she and other traveling nurses have been compensated for this time (though Defendants routinely approve requests for approval of double-time submitted by unionized nurses).

11.     Defendants have also required and/or suffered and permitted the traveling nurses to travel long distances for mandatory training programs, without compensating them for their travel time. This travel time has been substantial. For example, Ms. Osuegbu had to travel 8 hours in a single day of training, including the long bus trip to the training site and the bus trip home.

12.     Accordingly, Plaintiff and those similarly situated have been denied the straight time and double time wages they are owed under California law.

13.     Plaintiff, Evette Osuegbu, worked as traveling nurse for Defendants from approximately February 2015 to May 2015. She brings Causes of Action One through Six (the "class claims") as a class action on behalf of herself and other similarly situated individuals who have worked as traveling nurses for Defendants in California, at any time beginning four years before the filing of this Complaint, through the resolution of this action. Plaintiff's class claims are brought under the Common Law and California wage and hour laws stemming from Defendants' failure to compensate their traveling nurses for all the regular overtime hours they work, and at their statutorily mandated double-time rate for hours worked in excess of 12 in a day.

14.     Plaintiff, on her own behalf and on behalf of all Class Members, brings the class claims pursuant to California Labor Code §§ 201, 202, 203, 221-223, 226, 510, 1174, 1194, and 1198; and California Code of Regulations, Title 8 §11050 §§ 7 & 11-12 (Wage Order No. 5), and under Business & Professions Code §§ 17200-17208, for unfair competition due to Defendants' unlawful, unfair and fraudulent business acts and practices. Plaintiff challenges Defendants' policies of: (1) denying Plaintiff and the Class their overtime and double time wages despite requiring and/or suffering and permitting them to work in excess of 12 hours per day; (2) denying Plaintiff and the Class their straight time wages for discreet periods in which they were not compensated for time spent traveling to mandatory training programs; (3) failing to provide Plaintiff and the Class with accurate, itemized wage statements; (4) failing to maintain accurate payroll records; and (5) failing to timely pay Plaintiff and the Class full wages upon termination or resignation. Plaintiff, on behalf of herself and all others similarly situated, seeks declaratory and injunctive relief, including restitution under Bus. & Prof. Code §17203. Plaintiff, on behalf of herself and all others similarly situated, also seeks compensation, damages, penalties, interest, and attorneys' fees and costs to the full extent permitted by applicable law.

15.    Plaintiff brings Cause of Action Seven as a proxy of the State of California on behalf of other aggrieved employees for penalties under the Private Attorneys General Act (PAGA).  The PAGA provides that any civil penalty assessed and collected by the Labor and Workforce Development Agency (LWDA) for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of herself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.  The PAGA also provides that an aggrieved employee can bring a civil action on behalf of other aggrieved employees for violation of any other Labor Code provision that does not itself contain a civil penalty, in which case the civil penalties are assessed at $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.  On September 21, 2015 Plaintiff provided written notice by certified mail to the LWDA and Defendants of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.  Thirty-three days have passed and the LWDA has not indicated that it would pursue the violations.  Plaintiff therefore seeks these civil penalties and attorneys' fees and costs pursuant to Labor Code § 2699(g)(1).

## II.    JURISDICTION AND VENUE

16.    The Court has jurisdiction over this class action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10.

17.    Additionally, this Court has jurisdiction over Plaintiff's and the Class' claims for injunctive relief, including restitution of earned wages, arising from Defendants' unfair competition under Business & Professions Code §§ 17203 and 17204.

18.    The Court has jurisdiction over Defendants because they do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market through the advertising, marketing and sale of goods and services, to render the

exercise of jurisdiction over Defendants by the California court consistent with traditional notions of fair play and substantial justice.

19.  Venue is proper in this County pursuant to Code of Civil Procedure § 395.5. Defendants employ Plaintiff and Class Members, have various places of business, and transact business in this County; Defendants, Plaintiff and Class Members perform their contracts in this County; Defendant Kaiser Permanente International is headquartered in this County; and events complained of occurred in this County.

## III.   PARTIES

20.  Plaintiff and all of the proposed Class Members as set forth below are current or former traveling nurses who worked for Defendants in California at any time beginning four years before the filing of this Complaint, through the resolution of this action.

21.  Plaintiff, Evette Osuegbu, is a resident Granite City, Illinois in Madison County. Plaintiff worked as a traveling nurse for Defendants in Alameda County, from approximately February 2015 to May 2015.

22.  Defendants employed Ms. Osuegbu as a traveling nurse and Ms. Osuegbu held this same job position since she began working for Defendants in February of 2015.  Defendants terminated Ms. Osuegbu's employment in May 2015.

23.  Defendant AMN Healthcare, Inc. is and at relevant times has been engaged in the business of health care staffing in the State of California. Defendant AMN Healthcare, Inc. has places of business at various locations in California, including in this County.

24.  Defendant Kaiser Permanente International is and at all relevant times has been engaged in the business of health care and hospital services in the State of California.  Defendant Kaiser Permanente International is headquartered in this County, and has places of business at various locations in California, including in this County.

## IV.    FACTUAL ALLEGATIONS

25.    During the relevant time period of this action, Defendants have employed Plaintiff and other similarly situated individuals to provide nursing services.  Their job duties have included assisting patients in recovery and prevention, administering tests, checking vital signs, blood pressures, and temperatures, filling out reports regarding a patient's health and recovery for review by the treating physician and other nurses, providing medication, providing pre- and post-operation care, administering intravenous infusions, providing wound care, physically moving and otherwise assisting patients with everyday activities, performing other treatment duties, and performing additional administrative duties at the direction of Defendants, such as attending staff meetings and filling out patient charts and other paperwork.

26.    Defendant AMN contracts with several hospitals throughout California—including Defendant Kaiser—to provide nurse staffing services by employing and compensating traveling nurses and assigning them to work at one of the several hospitals with which it contracts.

27.    The traveling nurses employed by Defendants are *not* unionized, but the permanent, non-traveling nurses employed by Defendant Kaiser and the other health care systems served by Defendant AMN typically *are* unionized

28.    Ms. Osuegbu worked at the Oakland, California, Kaiser branch.

29.    Pursuant to standard employment contracts and California law, Defendants are obligated to compensate traveling nurses at a straight time rate of pay for the first 8 hours worked in a day, at an overtime premium rate of 1.5 times the straight time rate for hours worked in excess of 8 in a day, and at a "double-time" rate of 2 times the straight time rate for hours worked in excess of 12 in a day.

30.    Defendants have regularly scheduled traveling nurses to work four or more days per week, and to work 12-hour shifts.  For example, Ms. Osuegbu and other traveling nurses working at Defendant Kaiser's hospitals in Oakland are often scheduled to work from 7:15 a.m. to 7:45 p.m. (with a half hour lunch period).

31.    As a matter of policy and practice, Defendants have routinely required traveling nurses to attend "huddles" and individual meetings with supervisors at the beginning of their 12-hour shifts. During these mandatory meetings, Defendants' managers and supervisors discuss safety, provide tutorials for using medical devices and other products, and give motivational speeches.  While these meetings are scheduled to last only 15 minutes, they routinely last 30 minutes to an hour. As a result, traveling nurses routinely begin their shifts already behind schedule.

32.    In addition, the traveling nurses—including Ms. Osuegbu—are and at all relevant times have been responsible for "handing off" their patients to the next shift of nurses who will be treating their patients.  These hand-offs must occur at the end of the traveling nurses' shifts because their purpose is to prepare the nurse on the next shift for his or her assignment.

33.    Typically, "hand-offs" require visiting with the nurse working the subsequent shift, as well as each of the approximately 5 patients to whom the traveling nurses have been assigned, checking the patients' vital signs, updating records, writing up status reports for the review of the nurse working the subsequent shift, or review by other hospital personnel, and briefing the nurse working the subsequent shift on the status of the patient.  "Handing-off" to the next shift requires a lot of communication between the traveling nurse and the nurse working the subsequent shift regarding the status of the patients and any particular treatment needs the patients may have. "Handing-off" 5 patients to the next shift is expected to take at least 1 hour.  In cases in which patients require specialized treatment or where a traveling nurse's patients number more than 5, lengthier communications with nurses working the subsequent shifts become necessary.  Defendants may also add additional patients to a traveling nurse's "hand-off" responsibilities mid-stream. In such cases in which there are more than 5 patients or additional patients are added on an ad-hoc basis, the "hand-off" process can take up to and over 2 and ½ hours.

34.    Defendants communicate to traveling nurses the importance of taking special care to accurately record patient information, and clearly and effectively communicate all necessary information to the nurses working the subsequent shift, such as patients' health history, diagnosis,

and plan of care.  This is because passing along inaccurate information or failing to alert subsequent staffers of a patient's particular needs can contribute to gaps in patient care and breaches in patient safety, such as medication errors, wrong-site surgery, and even patient deaths.

35.     Defendants require traveling nurses to "hand-off" their patients to the next nurse who will be treating the same patients *after* that nurse attends the "huddle" and individual meeting with supervisor(s).  Yet, because the "huddles" and individual meetings routinely last 30 minutes to an hour (rather than the allotted 15 minutes), traveling nurses routinely must wait 15-45 minutes for the next shift's meetings to conclude before beginning the "hand-off" process.

36.     Even though the "huddles" and other meetings routinely last 30 minutes to an hour (rather than the allotted 15 minutes), and the "hand-offs" typically take at least 1 hour to be completed (and often as many as 2 or more hours), Defendants build an overlap of only 30 minutes into the nurses' shifts.  As a result, traveling nurses routinely must wait 15-45 minutes for the next shift's meetings to conclude before beginning the "hand-off" process.  In addition, because the traveling nurses cannot begin the 1 or more hour handoff process until the next shift's huddle and other meetings conclude, the traveling nurses routinely do not start the "hand-off" process until after their 12 hour shifts are scheduled to conclude.

37.     For example, a traveling nurse's shift may be scheduled to conclude at 7:45 p.m., while the next shift is scheduled to begin at 7:15 p.m.  Because the subsequent shift's "huddles" and other meetings would often not conclude until approximately 8:15 p.m, the traveling nurses on the previous shift would not be able to begin the hour-long process of handing off their patients to the next shift until 8:15 p.m.  By the time the hand-off process would be completed at approximately 9:15 p.m., the traveling nurses on the prior shift would have worked approximately an hour-and-a-half beyond their pre-scheduled shift completion time, or 13.5 hours, despite being scheduled to work a 12 hour shift.

38.     In addition, Defendants assign the traveling nurses so many patients (5 or more per shift) and such a heavy workload (composed of duties including, but not limited to: taking patient

pulses, samples, temperatures, and blood pressures; writing records; filling out patient charts; providing pre- and post-operation care; monitoring and administering medication and intravenous infusions; "handing-off" patients to the next shift of nurses; performing physical exams and health histories; providing wound care; provide healthcare counseling and education to patients; and direct other healthcare personnel, among other duties) that they typically cannot complete all of their duties within the pre-allotted 12 hour shift time.

39.    Defendants require the traveling nurses to obtain a certification from their hospital "lead nurses" or other supervisors to approve any double time. As a result, the traveling nurses must ask the "lead nurses" or other supervisors to sign off on their timecards for time in excess of 12 hours in a workday. Without certification, traveling nurses are not paid at all for any work performed in excess of 12 hours per day, much less at their statutorily mandated double time rate.

40.    However, lead nurses and other supervisors at Kaiser and other hospitals to which traveling nurses have been assigned routinely have refused to approve this double-time (though they have routinely approved such requests when made by permanent, unionized nurses). When traveling nurses have sought payment, Defendants have refused, on the basis that the hospital did not sign off on the double time. Asking for approval of the double time has become a futile exercise.

41.    As a result Defendants' consistent practice of not approving payment of overtime and double time, reporting the total hours worked has become futile. Thus, Defendants have required and/or suffered and permitted the traveling nurses to work without pay for time reflected on their time cards as well as for time that is not recorded anywhere.

42.    Despite several complaints by Ms. Osuegbu, neither Defendant AMN nor Defendant Kaiser have taken any action to ensure that she and other traveling nurses have their hours worked in excess of 12 hours per day certified, or compensated at all, much less at the statutorily mandated double time rate.

43.    Defendants also require and/or suffer and permit the traveling nurses to travel long distances to attend training programs, without compensating them for their travel time. This travel

time has been substantial. For example, Ms. Osuegbu had to travel 8 hours in a single day of training, including the long bus trip to the training site and the bus trip home.

44.    Accordingly, the traveling nurses—including Ms. Osuegbu—have been denied the wages and benefits to which they are entitled under California law.

## V.    CLASS ACTION ALLEGATIONS

45.    Plaintiff brings Causes of Action One through Six as a class action on behalf of herself and all others similarly situated pursuant to Code of Civil Procedure § 382. Plaintiff brings the PAGA Cause of Action as a law enforcement action, not as a class action. The Class that Plaintiff seeks to represent is composed of and defined as follows:

> "All individuals who worked as a traveling nurse or like hourly position for either Defendant AMN and/or Defendant Kaiser in California at any time beginning four years before the filing of this Complaint." (the "Class")

46.    _Community of Interest_. This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because the proposed Class is easily ascertainable and there is a well-defined community interest in the litigation:

(a)    _Numerosity_. Defendants have employed hundreds of traveling nurses in California from 2012 through the present. Class members are therefore far too numerous to be individually joined in this lawsuit.

(b)    _Common Questions of Law and/or Fact_. Common questions of law and/or fact exist as to the members of the Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class. The common questions include the following:

i.    Whether Defendants required and/or suffered and permitted Plaintiff and the other traveling nurses to work in excess of 12 hours per day;

ii.    If so, whether Defendants have refused to certify and approve payment of double-time wages worked in excess of 12 hours per day;

iii. Whether Defendants have failed to compensate Plaintiff and the other traveling nurses at the statutorily mandated double-time rate for hours worked in excess of 12 in a day;

iv. Whether Defendants failed to keep accurate records of hours worked and wages earned by traveling nurses;

v. Whether Defendants' failure to compensate Plaintiff and the other traveling nurses at a double-time rate for hours worked in excess of 12 per day has been willful, intentional or reckless;

vi. Whether the paychecks provided to the traveling nurses in connection with their compensation contain all the elements mandated for accurate itemized wage statements under Cal. Labor Code § 226(a);

vii. Whether traveling nurses who had their employment relationship with Defendants terminated are entitled to penalty wages for Defendants' failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship;

viii. Whether Defendants' policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

ix. Whether Defendants' policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, *et seq.*; and

x. The injunctive and/or monetary relief to which Plaintiff and the Class may be entitled as a result of the violations alleged herein.

(c) *Typicality*. Plaintiff's claims are typical of the claims of the Class. Defendants' common course of conduct in failing to approve and compensate traveling nurses at the statutorily mandated double time rate for hours in excess of 12 per day that they require and/or suffer and permit them to perform, and failing to compensate them at all

for time spent performing discrete tasks they are required and/or suffered and permitted to perform, has caused Plaintiff and the proposed Class to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the proposed Class.

(d) *Adequacy of Representation.* Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

(e) *Superiority of Class Action.* The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Failure to Pay Overtime Compensation**
**California Labor Code §§ 510, 515.5, 1194, and 1198 *et seq.*, and IWC Wage Order No. 5.**

47.    Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

48.    California Labor Code §§ 510 and 1198, and IWC Wage Order No. 5, §3, provides that employees in California shall not be employed more than eight (8) hours in any workday or

forty (40) hours in any workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

49.  Defendants have failed to pay Plaintiff, and other members of the Class, overtime compensation for the hours they worked in excess of the maximum hours permissible by law under California Labor Code §§ 510 and 1198, and IWC Wage Order No. 5, §3.  Defendants require and/or suffer and permit Plaintiff and other members of the Class to work hours in excess of 8 in a day and 12 in a day.

50.  Defendants' failure to pay additional, premium rate compensation to Plaintiff and members of the Class for their overtime and double time hours worked has caused Plaintiff and Class Members, and continues to cause many Class Members to suffer damages in amounts which are presently unknown to them but which exceed the jurisdictional threshold of this Court and which will be ascertained according to proof at trial.

51.  Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

52.  As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and Class Members have been deprived of overtime and double time compensation in an amount to be determined at trial.  Plaintiffs and other members of the class request recovery of overtime and double time compensation according to proof, interest, attorney's fees and costs of suit pursuant to California Labor Code §§1194(a), 554, 1194.3 and 1197.1, as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes.

## SECOND CAUSE OF ACTION
### Failure to Pay for All Hours Worked in Violation of
### California Labor Code §§ 201, 202, 204, and 221-223

53.  Plaintiff realleges and incorporates the above paragraphs as though fully set forth below.

54.     California Labor Code §200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

55.     California Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

56.     California Labor Code §204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

57.     California Labor Code §§221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

58.     Defendants have maintained and continues to maintain a policy of denying the traveling nurses compensation for time spent traveling to and from training sites.  Accordingly, Defendants have artificially reduced Plaintiff's and its other traveling nurses' pay rates by denying them compensation for travel time to and from training worksites.

59.     As a proximate result of these violations, Defendants have damaged Plaintiff and the Class in amounts to be determined according to proof at trial.

60.     Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

61.     Plaintiff, on behalf of herself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

**THIRD CAUSE OF ACTION**
**Failure to Keep Accurate Payroll Records**
**California Labor Code §§ 1174 & 1174.5**

62.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

63.     California Labor Code §1174 requires Defendants to maintain payroll records showing, among other things, the actual hours worked daily by its employees, wages paid to its employees, the number of piece-rate units earned by its employees, and any applicable piece rate paid to its employees.

64.     California Labor Code §1174.5 provides that employers who willfully fail to maintain accurate payroll records shall be subject to civil penalties.

65.     Defendants knowingly, intentionally, and willfully have failed to maintain payroll records showing the actual hours worked by, and accurate hourly rate paid to Plaintiff and Class members as required by California Labor Code §1174 and in violation of §1174.5.  As a direct result of Defendants' failure to maintain payroll records, Plaintiff and Class members have suffered actual economic harm as they have been precluded from accurately monitoring the number of hours they work, and thus seeking all wages owed in the form of overtime and double time compensation.  As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and the Class members are entitled to recover damages and civil penalties in an amount to be determined at trial, plus interest, attorneys' fees, and costs of suit.

66.     Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

67.     Plaintiff, on behalf of herself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

## FOURTH CAUSE OF ACTION
### Failure to Furnish Accurate Wage Statements
### California Labor Code § 226

68.    Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

69.    California Labor Code §226(a) provides that every employer must furnish each employee with an accurate itemized wage statement, in writing, showing nine pieces of information, including: 1) gross wages earned; 2) total hours worked by the employee; 3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece rate basis; 4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of the period for which the employee is paid; 7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number; 8) the name and address of the legal entity that is the employer; and 9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

70.    California Labor Code §226(e) provides that an employee suffering an injury as a result of a knowing and intentional failure to provide a statement accurately itemizing the information set forth in Labor Code §226(a), then the employee is entitled to recover the greater of all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

71.    Defendants intentionally and willfully failed to furnish Plaintiff and Class members with timely, accurate, itemized statements showing total hours worked, gross wages earned, net wages earned, and the applicable hourly rates as required by California Labor Code §226(a).

72.    Plaintiff and the Class members have been injured by Defendants' violation of California Labor Code §226(a) because they have been denied their legal right to receive and their protected interest in receiving, accurate, itemized wage statements, and could not promptly and easily ascertain from the wage statement alone their total hours worked, gross wages earned, net wages earned, and the applicable hourly rates, among other required information.

73.     Plaintiff and Class Members have also been injured as a result of having to bring this action to obtain correct wage information following Defendants' refusal to comply with many requirements of the California Labor Code. As a result, Defendants are liable to Plaintiff and Class members, for the amounts, penalties, attorneys' fees, and costs of suit provided by California Labor Code §226(e).

74.     Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

75.     Plaintiff, on behalf of herself and the proposed Class, requests an assessment of penalties as stated herein and other relief as described below.

76.     Plaintiff, on behalf of herself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

### FIFTH CAUSE OF ACTION
#### Waiting Time Penalties
#### California Labor Code §§ 201-203

77.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

78.     California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge. California Labor Code §202 requires an employer to promptly pay compensation due and owing to said employee within seventy-two (72) hours of that employee's termination of employment by resignation. California Labor Code §203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under California Labor Code §§201-202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

79. Plaintiff and members of the Class have left their employment with Defendants during the statutory period. Defendants willfully failed and refused, and continue to willfully fail and refuse, to timely pay all wages owed to Plaintiff and to all other proposed Class members whose employment with Defendants has ended or been terminated at any point during the statutory period. As a result, Defendants are liable to Plaintiff and other formerly employed members of the proposed Class for waiting time penalties, together with interest thereon, attorneys' fees, and costs of suit, under California Labor Code §203.

80. Plaintiff, on behalf of herself and the proposed Class, request waiting time penalties pursuant to California Labor Code §203, plus attorneys' fees and costs, as described below.

## SIXTH CAUSE OF ACTION
### Unfair Competition and Unlawful Business Practices
### California Business and Professions Code §§ 17200, *et seq.*

81. Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

82. California Business and Professions Code §17200 defines unfair competition to include, "unlawful, unfair or fraudulent business practices."

83. Plaintiff and all proposed Class Members are "persons" within the meaning of Business and Professions Code §17204, who have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition.

84. Defendants have been committing, and continues to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

(a) violations of California Code Regulations, Title 8 § 11050, ¶ 7;

(b) violations of California Labor Code §§ 201-203

(c) violations of California Labor Code §§ 221-223;

(d) violations of California Labor Code § 226;

(e) violations of California Labor Code § 510

(f)   violations of California Labor Code §§ 1174;

(g)   violations of California Labor Code § 1194; and

(h)   violations of California Labor Code § 1198.

85.   As a result of its unlawful, unfair, and/or fraudulent business acts and practices, Defendants have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiff and proposed Class Members.  Defendants' unlawful, unfair, and/or fraudulent conduct has also enabled Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

86.   Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of the unlawful, unfair, and/or fraudulent business acts or practices.

87.   Plaintiff seeks a court order enjoining Defendants from the unlawful, unfair, and/or fraudulent activity alleged herein.

88.   Pursuant to Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid.

89.   Plaintiff further seeks an order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to herself and members of the proposed Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

90.   Plaintiff seeks restitution to herself and all others similarly situated of these amounts, including all earned and unpaid wages and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. §1021.5.

## SEVENTH CAUSE OF ACTION
### Statutory Penalties Pursuant to PAGA (Labor Code §§2698, *et seq.*)
### (On behalf of All Aggrieved Employees)

91.    Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

92.    At all times set forth herein, the Private Attorneys General Act of 2004 (PAGA, California Labor Code §§ 2698-99) applied to Defendants' employment of Plaintiff and the proposed Class Members.

93.    At all times set forth herein, California Labor Code § 2699(a) has provided that any provision of law under the California Labor Code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency (LWDA) for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of herself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

94.    At all times set forth herein, the PAGA has also provided that for the violation of any Labor Code provision that does not itself contain a civil penalty, there are established civil penalties of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. Cal. Lab. C. § 2699(f).

95.    A civil action under PAGA may be brought by an "aggrieved employee," any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

96.    Defendants have been committing, and continue to commit, violations of the California Labor Code, including, but not limited to:

(a)  violations of California Labor Code §§ 201-203

(b)  violations of California Labor Code §§ 221-223;

(c)  violations of California Labor Code § 226;

(d)  violations of California Labor Code § 510

(e)  violations of California Labor Code §§ 1174;

(f)   violations of California Labor Code § 1194; and

(g)   violations of California Labor Code § 1198.

97.   Plaintiff was employed by Defendants and the alleged violations were committed against him during his time of employment and she is, therefore, an aggrieved employee.  Plaintiff and other employees are "aggrieved employees" as defined by California Labor Code §2699(c) in that they are all current or former employees of Defendants, and one or more of the alleged violations were committed against them.

98.   Pursuant to California Labor Code § 2699.3, an aggrieved employee, including Plaintiff, may pursue a civil action arising under the PAGA after the following requirements have been met:

(a)   The aggrieved employee shall give written notice by certified mail (hereinafter "Employee's Notice") to the LWDA and the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations;

(b)   The LWDA shall provide notice (hereinafter "LWDA Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violations within thirty (30) calendar days of the postmark date of the Employee's Notice.  Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within thirty-three (33) calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code §2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

99.   On September 21, 2015, Plaintiff provided written notice by certified mail to the LWDA and Defendants of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

100.   Pursuant to California Labor Code §2699.3(a)(2)(C), Plaintiff may as a matter of right amend this Complaint to add a cause of action arising under § 2699.3 at any time within 60 days of receiving notice from the LWDA, or if notice is not provided by the LWDA within 33 days of Plaintiff's sending of written notice by certified mail to the LWDA and to Defendants.  Pursuant to §2699(a), Plaintiff seeks civil penalties set forth in §§ 201, 202, 203, 221-223, 226(c), and 1174.5.

101.   33 days have passed and the LWDA has not indicated that it would pursue the violations.

102.   Plaintiff therefore seeks these civil penalties and attorneys' fees and costs pursuant to Labor Code § 2699(g)(1).

### VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class she seeks to represent in this action, requests the following relief:

a)   That the Court determine that this action may be maintained as a class action under Code of Civil Procedure § 382;

b)   For an order appointing Plaintiff as representative of the Class;

c)   For an order appointing Plaintiff's attorneys as Class Counsel;

d)   That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 5 by failing to pay each member of the proposed Class for all hours worked, and failing to pay them their statutorily mandated double time wages despite requiring and/or suffering and permitting them to work in excess of 12 hours per day;

e)   That the Court find that Defendants has been unjustly enriched;

f)   That the Court find that Defendants have violated the recordkeeping provisions of California Labor Code §§ 1174 and 1174.5 as to Plaintiff and the Class;

g)   That the Court find that Defendants have been in violation of California Labor Code § 226 by failing to timely furnish Plaintiff and members of the Class with itemized

---

CLASS ACTION COMPLAINT
*Osuegbu, et al. v. AMN Healthcare, Inc., et al.*

statements accurately showing gross wages earned, net wages earned, total hours worked, and applicable hourly rates;

h) That the Court find that Defendants have been in violation of California Labor Code §§201 and 202 and therefore owe waiting time penalties under California Labor Code §203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiff and other formerly employed members of the Class;

i) That the Court find that Defendants have committed unfair and unlawful business practices, in violation of California Business and Professions Code §17200, *et seq.*, by their violations of the Common Law, Labor Code and Wage Orders as described above;

j) That the Court order an accounting of the payroll records to determine what restitution is owed and to whom, pursuant to California Business and Professions Code §17203;

k) That the Court award to Plaintiff and the proposed Class members compensation and restitution for all wages owed;

l) That the Court award to Plaintiff and the proposed Class Members statutory penalties as provided herein, including but not limited to Labor Code §§ 203 and 226;

m) That the Court award to Plaintiff and the proposed Class Members civil penalties as provided herein pursuant to Labor Code §2699(a) (PAGA).

n) For pre- and post-judgment interest;

o) That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant to Labor Code §§ 203, 225.5, 226, and 2699(g)(1), Code of Civil Procedure § 1021.5, and/or other applicable law; and

p) For such other and further relief as this Court deems just and proper.

///

///

///

Dated:  April 6, 2016

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

By:

JOSHUA KONECKY
Attorney for Plaintiff Evette Osuegbu
and the Proposed Class.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff and the Class are entitled to a jury.

Dated:  April 6, 2016

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

By: _____

JOSHUA KONECKY
Attorney for Plaintiff Evette Osuegbu
and the Proposed Class.

# EXHIBIT B

1  Kenneth D. Sulzer (SBN 120253)
   ksulzer@constangy.com
2  Steven B. Katz (SBN 139078)
   skatz@constangy.com
3  Sarah Kroll-Rosenbaum (SBN 272358)
   skroll-rosenbaum@constangy.com
4  CONSTANGY, BROOKS, SMITH & PROPHETE LLP
   1800 Century Park East, 6th Floor
5  Los Angeles, CA 90067
   Telephone: 310-909-7775
6

7  Attorneys for Defendant AMN HEALTHCARE, INC.

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF ALAMEDA

10

11  EVETTE OSUEGBU, individually and on behalf of
    all others similarly situated, and as a proxy of the
12  State of California on behalf of aggrieved employees,

13                        Plaintiffs,

14          vs.

15  AMN HEALTHCARE, INC. and KAISER
    PERMANENTE INTERNATIONAL, and DOES 1-
16  50,

17                        Defendants.

18

19

20        Defendant AMN Healthcare, Inc., ("AMN") answers the Complaint ("Complaint") of

21  plaintiff Evette Osuegbu ("Plaintiff") as follows:

22                          **GENERAL DENIAL**

23        Pursuant to the provisions of Section 431.30(d) of the California Code of Civil Procedure,

24  AMN denies, generally and specifically, each and every allegation of the Complaint and further

25  denies, generally and specifically, that Plaintiff is entitled to damages or to any other relief

26  whatsoever by any act or omission on the part of AMN.

27

28

Case No. RG16810383

**ANSWER OF DEFENDANT
AMN HEALTHCARE, INC.**

[Assigned to the Honorable Winifred
Smith, Department 21]

Trial Date: Not set

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 4 2016

CLERK OF THE SUPERIOR COURT
By Lanette Buffin, Deputy

## SEPARATE DEFENSES

AMN also pleads the following separate and affirmative defenses to the Complaint. In asserting these defenses, AMN does not assume the burden of proof as to matters that, as a matter of law, are Plaintiff's burden to prove.

AMN does not presently know all of the facts and circumstances respecting Plaintiff's claims. AMN reserves the right to amend this Answer should it later discover facts demonstrating the existence of additional defenses.

## FIRST DEFENSE

### (Failure to State a Cause of Action)

1.     Neither Plaintiff's Complaint nor any purported cause of action therein alleged state facts sufficient to constitute claims upon which relief may be granted against AMN.

## SECOND DEFENSE

### (Statutes of Limitations)

2.     Plaintiff's Complaint, and each claim contained therein, is barred by the applicable statute of limitations for each cause of action contained therein.

## THIRD DEFENSE

### (Laches)

3.     Plaintiff has delayed inexcusably and unreasonably the filing of this action causing substantial prejudice to AMN and thus Plaintiff's claims are barred by the equitable doctrine of laches.

## FOURTH DEFENSE

### (Res Judicata)

1.     Plaintiff's Complaint, and each cause of action alleged therein, is barred by the doctrine of res judicata.

## FIFTH DEFENSE

### (Estoppel and Waiver)

2.     Plaintiff's Complaint, and each cause of action alleged therein, is barred by the

2

3927574v.1

doctrines of estoppel and waiver.

### SIXTH DEFENSE

#### (Unclean Hands)

3.     Plaintiff's Complaint, and each cause of action alleged therein, is barred by the doctrine of unclean hands.

### SEVENTH DEFENSE

#### (Not Willful)

4.     Plaintiff is not entitled to any penalty award under Section 203 of the California Labor Code since, at all times relevant and material herein, AMN did not willfully fail to comply with the compensation provisions of the California Labor Code.

### EIGHTH DEFENSE

#### (Attorneys' Fees)

5.     The Complaint fails to allege facts sufficient to establish a claim for attorneys' fees.

### NINTH DEFENSE

#### (Failure to Follow Employer Instructions)

6.     To the extent Plaintiff engaged in a handoff as a result of a willful failure to follow her employer's directions, she may not recover any pay for that handoff.

### TENTH DEFENSE

#### (Constitutionality)

7.     The penalties claimed by Plaintiff in this case are excessive and, thus, violate the state and federal Constitutions.

### ELVENTH DEFENSE

#### (Failure to Exhaust Administrative Remedies)

8.     The Complaint, and each cause of action alleged therein, is barred because Plaintiff failed to exhaust her administrative remedies.

ANSWER OF DEFENDANT AMN HEALTHCARE, INC.

3927574v.1

1
2

## TWELFTH DEFENSE

(Adequate Legal Remedy)

3        9.      Plaintiff's claims for equitable relief are barred because Plaintiff has an adequate

4    and complete remedy at law, and/or Plaintiff cannot make the requisite showing to obtain

5    injunctive relief in a labor dispute under California Labor Code Section 1138.1, *et seq.*

6

## THIRTEENTH DEFENSE

(No Injury)

7
8        10.     Plaintiff's claim for penalties pursuant to California Labor Code Section 226 fails

9    because she has not suffered injury as a result of the challenged statutory violation.

10

## FOURTEENTH DEFENSE

(No Basis for Class Claims)

11
12       11.     Plaintiff cannot establish the requirements for certification of a class under Code

13   of Civil Procedure Section 382.

14

## FIFTEENTH DEFENSE

(Ratification)

15
16       12.     Plaintiff's Complaint, and each cause of action alleged therein, is barred on the

17   ground that Plaintiff ratified AMN's alleged actions.

18

## SIXTEENTH DEFENSE

(Failure to Mitigate)

19
20       13.     If Plaintiff has suffered any damage as a result of the facts alleged in her

21   Complaint, which AMN denies, Plaintiff is not entitled to recover the amount of damages alleged

22   or any damages due to her failure to make reasonable efforts to mitigate or minimize the damages

23   incurred.

24

## SEVENTEENTH DEFENSE

(No Basis for Unfair Business Practices)

25
26       14.     AMN cannot be liable for any alleged violation of California Business and

27   Professions Code Section 17200 *et seq.*, because its actions were not unfair, fraudulent, nor likely to

28

3927574v.1                    ANSWER OF DEFENDANT AMN HEALTHCARE, INC.

1  mislead, and its actions, conduct, and dealings were lawful, as authorized by applicable state and

2  federal statutes, rules, and regulations, and such actions, conduct, and dealings were carried out in

3  good faith and for legitimate business purposes.

### EIGHTEENTH DEFENSE

#### (Plaintiff Lacks Standing)

6      15.    Plaintiff's Complaint, and each cause of action alleged therein, is barred because

7  Plaintiff lacks standing to sue.

### NINETEENTH DEFENSE

#### (Failure to State Facts Warranting Class Certification

#### and Class Damages or Any Other Representative Action)

11      16.    Plaintiff's allegations that this action should be certified as a class action or

12  representative action are barred by her failure to allege facts sufficient to warrant class certification

13  and/or an award of class damages, pursuant to California Code of Civil Procedure Section 382.

14  Plaintiff likewise failed to set forth any facts supporting any other form of representative action.

### TWENTIETH DEFENSE

#### (Failure to State Facts Warranting a Predominance of

#### Common Questions of Fact And Law)

18      17.    Plaintiff's Complaint, and each cause of action alleged therein, fails to the extent

19  that Plaintiff cannot allege a predominance of common questions of fact and law, as required

20  under California Code of Civil Procedure Section 382.

### TWENTY-FIRST DEFENSE

#### (De Minimus)

23      18.    Even if Plaintiff has suffered damages in the form of lost wages, such damages are

24  de minimus and therefore, not compensable as a matter of law.

### TWENTY-SECOND DEFENSE

#### (Consent)

27      19.    The Plaintiff and putative class members approved, consented to and/or authorized

28

5

1   the conduct alleged in the Complaint through their actions, omissions, and course of conduct;

2   accordingly, the Complaint and each purported cause of action therein are barred.

### TWENTY-THIRD DEFENSE

#### (Damages Not Caused by Defendant)

20.   The injuries and damages allegedly incurred by Plaintiff and putative class

members were not the result of any acts, omissions, or other conduct of AMN.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

#### (PAGA – Not "Aggrieved" Employees)

21.   The purported class action under the Private Attorneys' General Act ("PAGA") is

barred to the extent it seeks to recover penalties on behalf of individuals who are not "aggrieved

employees."

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

#### (PAGA – Unconstitutionality)

22.   To the extent that any liability is found against AMN, recovery under PAGA is

unconstitutionally excessive and violates AMN's due process rights.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

#### (PAGA – Duplicative Recovery)

23.   Plaintiff and the putative class members are not entitled to the recovery of penalties

under PAGA to the extent that such penalties are sought in addition to penalties for the same claims

and such duplicative recovery is barred and constitutes unjust enrichment.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

#### (Right to Raise Other Defenses)

24.   AMN reserves the right to and does rely upon such other and further affirmative

defenses as may become available during discovery in this action, and AMN reserves the right to

amend this Answer to assert any such defenses.

### RESERVATION OF RIGHTS

AMN hereby gives notice that it intends to rely upon such other and further affirmative

6

1    defenses as may become available during discovery in this action and reserves the right to amend

2    its Answer to assert any such defenses.

3            WHEREFORE, AMN prays for judgment as follows:

4        1.      That Plaintiff takes nothing by her Complaint herein;

5        2.      That the Complaint be dismissed;

6        3.      That judgment be entered in favor of AMN;

7        4.      For attorneys' fees;

8        5.      For costs of suit incurred herein; and

9        6.      For such other and further relief as the Court may deem proper.

10   Dated: May 24, 2016

11                               CONSTANGY, BROOKS, SMITH &
                                 PROPHETE, LLP

12

13                               By:
                                    Sarah Kroll-Rosenbaum
14                                  Attorneys for Defendant AMN HEALTHCARE, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        7

1

## PROOF OF SERVICE

2

3      I am over 18 years of age and not a party to the within entitled action.  I am employed at the
law firm of CONSTANGY, BROOKS, SMITH & PROPHETE LLP, and my business address is
4      1800 Century Park East, 6th Floor, Los Angeles, California 90067.  On May 24, 2016, I served a
copy of the following:  **ANSWER OF DEFENDANT AMN HEALTHCARE, INC.** on the
5      attorney(s) for the parties to this action by the following method:

6

7      X      **BY MAIL**:  By placing same, with postage fully prepared, in the United States Mail,
addressed as indicated below.  I am readily familiar with the practices of these law offices for
8      collection and processing of correspondence for mailing with the United States Postal Service.  Such
correspondence is deposited with the United States Postal Service in the same day in the ordinary
9      course of business.

10

11     Joshua Konecky, Esq.                          *Attorneys for Plaintiffs*
       Nathan Piller, Esq.
12     SCHNEIDER WALLACE COTTRELL
       KONECKY WOTKYNS LLP
13     2000 Powell Street, Suite 14500
       Emeryville, CA 94608
14

15     I declare under penalty of perjury under the laws of the United States and the State of
California that the foregoing is true and correct.

16

       Executed on May 24, 2016 at Los Angeles, California.
17

18

19                                                     Judy Gabor

20

21

22

23

24

25

26

27

28

3927574v.1          ANSWER OF DEFENDANT AMN HEALTHCARE, INC.