Joshua Konecky, Esq. (SBN 182897)
Nathan Piller, Esq. (SBN 300569)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
jkonecky@schneiderwallace.com
npiller@schneiderwallace.com

Shanon Carson (admitted pro hac vice)
Sarah Schalman-Bergen  (admitted pro hac vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000
scarson@bm.net
Sschalman-bergen@bm.net


Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SHAW, et al., individually and on behalf of all others similarly situated, and as a proxy of the State of California on behalf of aggrieved employees<br><br>      Plaintiffs,<br><br>vs.<br><br>AMN SERVICES, LLC, KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, INC., and THE PERMANENTE MEDICAL GROUP, INC<br><br>      Defendants. | Case No. 3:16-cv-02816 JCS<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 21, 2018<br>Time: 9:30 a.m.<br>Courtroom:  G, 15th Floor<br>Judge: Hon. Joseph C. Spero |

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on December 21, 2018 at 9:30 a.m. or as soon thereafter as the parties may be heard in Courtroom G, 15th Floor of the above-titled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will move, and hereby do move, this Court for the relief as follows:

1.    To preliminarily approve the Joint Stipulation of Class Action Settlement Agreement and Release (the "Settlement Agreement") between Plaintiffs and Defendants;

2.    To certify under Federal Rule of Civil Procedure 23(a) & (b)(3), a settlement class defined as follows:

> All traveling nurses who worked in the job position(s) of Registered Nurse, Licensed Practical Nurse, or another nursing position(s), for Defendant AMN and/or Defendant Kaiser, in one or more Kaiser facilities in California between September 11, 2013 and the date of final approval.

3.    To appoint the named Plaintiffs Robert Shaw, Candy Kucharski and Jennifer Corona Teitelbaum as Settlement Class Representatives and Plaintiffs' attorneys as Settlement Class Counsel;

4.    To appoint Heffler Claims Group as the Settlement Administrator.

5.    To approve the proposed notice to be distributed to Class Members under Federal Rule of Civil Procedure 23(c)(2) and (e)(1);

6.    To set a fairness hearing and briefing schedule for the motion for final approval, the motion for attorneys' fees and costs, and the motion for approval of service awards, consistent with the schedule for class notice, objections, disputes, and requests for exclusions, as set forth in this Motion.

This motion is based on the accompanying memorandum of points and authorities; the Settlement Agreement attached as Exhibit 1 to the Declaration of Joshua Konecky ("Konecky Decl.") and the Proposed Class Notice (attached as Exhibit A to the Settlement Agreement); the Declaration of Joshua Konecky; such oral argument as may be heard by the Court; and all other papers on file in this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: November 21, 2018

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

/s/ *Joshua G. Konecky*

Joshua G. Konecky

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT.................................2

    A.   Plaintiffs' Claims and Litigation Risk…………………………….........2

    B.   Early Pleadings………………………………………………………… 3

    C.   Early Stage Discovery……………………………………………………3

    D.   Early Resolution Efforts…………………………………………………4

    E.   Further Discovery and Dispute Regarding Kaiser Discovery……………………………4

    F.   Third Mediation……………………………………………………… 5

    G.   Motion for Class Certification and Related Discovery…………………………………6

    H.   *Clarke* Mediation…………………………………………………...7

    I.   Final Mediation and Settlement……………………………………… 8

III. KEY TERMS OF THE PROPOSED SETTLEMENT ..........................................9

IV.  ARGUMENT ......................................................................................................12

    A.   Class Certification is Appropriate for Settlement Purposes…………………………12

    B.   Overview of the Class Action Settlement Process………………………………14

    C.   The Proposed Settlement Meets the Standard for Preliminary Approval…………….15

        1.   Legal Standard for Preliminary Approval..................................................15

        2.   The Settlement is the product of serious, informed and non-collusive
negotiations ...........................................................................................16

        3.   The Settlement Has No Obvious Deficiencies and Does not Grant Preferential
Treatment to Class Representatives or Other Class Members..............................17

        4.   The Settlement Falls within the Range of Possible Approval ................................19

        5.   The Service Awards to the Class Representatives are Fair and Reasonable ........25

        6.   Plaintiffs are entitled to reasonable attorneys' fees and costs...............................26

    D.   The Court should order dissemination of the proposed class notice…………………..26

        1.   The Settlement Agreement provides for the best method of notice practicable
under the circumstances ..........................................................................26

        2.   The proposed form of notice adequately informs class members of the litigation
and their rights in connection with the settlement .................................................27

E.    The Court should set a schedule for final approval……………………………… 28

V.   CONCLUSION.........................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*
521 U.S. 591 (1997) .................................................................................... 14

*Bolton v. U.S. Nursing Corp.*
2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ........................................... 22

*Brown v. Hain Celestial Grp.*, Inc.
2016 WL 631880 (N.D. Cal. 2016) ...................................................... 16, 17

*Carter v. Anderson Merchandisers, LP*
2010 WL 144067 (C.D. Cal. 2010) ............................................................ 16

*Chun-Hoon v. McKee Foods Corp.*
716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................... 15

*Churchill Vill. L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) .................................................................... 15

*Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*
867 F.3d 1093 (9th Cir. 2017) .................................................................... 3

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992) .................................................................. 15

*Eddings v. Health Net, Inc.*
2013 WL 169895 (C.D. Cal. 2013) ............................................................ 16

*Fernandez v. Victoria Secret Stores, LLC*
2008 WL 8150856 (C.D. Cal. 2008) .......................................................... 16

*Galt v. Eagleville Hosp.*
310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................................ 22

*Gaudin v. Saxon Mortgage Servs., Inc.*
2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ........................................... 25

*Gerard v. Orange Coast Mem'l Med. Ctr.*
397 P.3d 249 (Cal. 2017) ........................................................................... 24

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ........................................................ 12, 13, 15

*In re Heritage Bond Litig.*
2005 WL 1594403 (C.D. Cal. 2005) .......................................................... 19

*In re Synocor ERISA Litig.*
516 F.3d 1095 (9th Cir. 2008) .................................................................. 15

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................... 16

*In re: Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*
618 F.3d 988 (9th Cir. 2010) ..................................................................... 26

*Jimenez v. Menzies Aviation, Inc.*
2013 WL 1411228 (N.D. Cal. 2013) ................................................................21

*McClean v. Health Sys., Inc.*
2015 WL 12426091 (W.D. Mo. June 1, 2015)....................................................22

*Nat'l Rural Telecomm's Coop v. Directv, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 19, 22

*Nordstrom v. Ryan*
762 F.3d 903 (9th Cir. 2014).............................................................................3

*O'Sullivan v. AMN Services, LLC*
2014 WL 11514268 (N.D.Cal. 2014)............................................................ 1, 22

*Officers for Justice v. Civil Serv. Comm'n*
688 F.2d 615 (9th Cir. 1982) ..................................................................... 15, 19

*Rannis v. Recchia*
380 F. App'x. 646 (9th Cir. 2010) ....................................................................27

*Rodriguez v. West Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) ...........................................................................25

*Saldivar v. Priority One Med. Transp., Inc.*
2011 WL 13213889 (C.D. Cal. Mar. 22, 2011) ..................................................22

*Shaw v. AMN Healthcare, Inc.*
326 F.R.D. 247 (N.D. Cal. 2018) ............................................... 12, 13, 14, 23

*Trang v. Turbine Engine Components Techs. Corp.*
2012 WL 6618854 (C.D. Cal. Dec. 19, 2012)....................................................21

*Van Brokhorst v. Safeco Corp.*
529 F.2d 943 (9th Cir. 1976).............................................................................15

*Van Vranken v. Atlantic Richfield Co.*
901 F. Supp. 294 (N.D. Cal. 1995)....................................................................25

*Villalpando v. Exel Direct Inc.*
2016 WL 7785852 (N.D. Cal. Dec. 9, 2016) .....................................................25

*Weeks v. Kellogg Co.*
2013 WL 6531177 (C.D. Cal. 2013) ........................................................... 15, 25

*Wren v. RGIS Inventory Specialists*
256 F.R.D. 180 (N.D. Cal. 2009) ......................................................................13

**Statutes**
Labor Code § 2699 ...........................................................................................21

**Other Authorities**
Manual for Complex Litigation (Fourth) (2004).................................................14

Newberg on Class Actions (4th ed. 2002)............................................... 14, 15, 16

**Rules**

Fed. Rule Civ. Proc. 23 ........................................................................... 14, 15, 27

**Regulations**

Cal. Code Regs., tit. 8, § 11050 ............................................................................ 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Robert Shaw, Candy Kucharski and Jennifer Corona Teitelbaum seek preliminary approval of a proposed $20,000,000 non-reversionary, class-action settlement to resolve this wage and hour case brought on behalf of traveling nurses who have worked for Defendants AMN and Kaiser in at least one Kaiser facility in California from September 11, 2013 to the present.

The Settlement Agreement, which was achieved after two-and-a-half years of hard-fought litigation, will provide substantial monetary payments to approximately 8,212 traveling nurse/class members.  The average net recovery is approximately $1,570 per class member, after proposed fees, costs, and service awards.   The result is excellent, particularly in light of the class members' relatively short tenures in qualifying employment.  On average, class members worked in California Kaiser facilities for approximately 26 weeks during the class period, reflecting their status as temporary employees who move between various Kaiser and non-Kaiser facilities.  The net recovery per workweek is approximately $61.  Individuals who worked a full year for Defendants at Kaiser facilities in California will receive more than $3,140, double the average recovery.

This average individual recovery compares very favorably with analogous California wage and hour class action settlements. For instance, a previous wage and hour class action brought against Defendant AMN settled for $3 million on behalf of approximately 11,685 non-exempt healthcare professionals. *O'Sullivan v. AMN Services, LLC*, 2014 WL 11514268 (N.D.Cal. 2014) (Spero, J.). The average recovery under the settlement proposed here is more than three times that in *O'Sullivan*, and the per-workweek recovery in this case is more than *four* times that in *O'Sullivan*. Several other similar wage and hour settlements in the health care field have resulted in much lower per-person recoveries than in this proposed settlement. *See* Section IV.C.4, *supra*.  Thus, the recovery is very favorable for the claims at issue. And, as set forth more fully below, the proposed settlement satisfies all the criteria for settlement approval under Federal Rule of Civil Procedure 23.

The class members will <u>not</u> need to submit claim forms to receive a check, which will be sent automatically to those class members who do not opt-out.  In addition, the settlement reasonably

allocates $100,000 as civil penalties under the Private Attorneys General Act (PAGA), of which 75% will be paid to the LWDA.

None of the $20,000,000 total settlement amount will revert back to Defendants. Any residual remaining in the settlement fund after the payment of all claims will be paid to the designated *cy pres* beneficiary, Legal Aid at Work (LAAW), a non-profit organization that provides legal consultation and assistance to employees and is dedicated to strengthening civil and workplace protections. In addition, Defendants will pay any employer-side payroll tax obligations separately above the $20 million.

The Settlement was reached after extensive investigation, discovery, and motion practice, including Plaintiffs' successful motion for class certification. The negotiations were at arms-length, and facilitated by Jeffrey A. Ross, a mediator who specializes exclusively in the mediation of employment matters, over the course of a 12-hour mediation session. Further, Class Counsel brought substantial experience and expertise in wage and hour class actions to the negotiation process. The results here are excellent in light of the risks of continued litigation and potential exposure, as well as the relief obtained in other similar cases.

Accordingly, Plaintiffs request that the Court preliminarily approve the proposed settlement, certify the proposed settlement class, approve distribution of notice of the proposed settlement, and set a final approval hearing.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Plaintiffs' Claims and Litigation Risk

Plaintiffs alleged that Defendants knew and/or had reason to know that the traveling nurses placed in Kaiser facilities in California were working off-the-clock to perform patient transfers and charting after their scheduled shifts, and that they did not receive meal and rest periods that are truly off-duty, or within the time intervals required by California law. Plaintiffs brought claims under the California Labor Code and the California Industrial Welfare Commission wage orders for unpaid overtime and double time, non-compliant meal and rest periods, and statutory penalties for inaccurate wage statements and the failure to timely pay all wages due. *See* Second Amended Class

Action Complaint [ECF 92] at ¶¶ 1-21, 35-58, 67-124. Plaintiffs also asserted claims under the Private Attorney General Act of 2004 ("PAGA"), California Labor Code section 2699 *et seq*., and the Business and Professions Code sections 17200 *et seq*., based on the same allegations. *Id*. at ¶¶ 125-136. The class claims were based on complaints Class Counsel received from traveling nurses that Defendants would often discourage the full reporting and payment of overtime, and often did not provide full and adequate relief for meal and rest periods. Konecky Decl. at ¶ 2.

After conducting their initial investigation, Plaintiffs were confident about the merits of the case and that class-wide evidence would support their "pattern and practice" claims. *Id*. at ¶ 3. At the same time, bringing a class action case based on pattern and practice allegations was a risky proposition. Obtaining class certification of a pattern and practice claim—even when meritorious—is difficult without facially unlawful policies. *See, e.g., Civil Rights Education and Enforcement Center v. Hospitality Properties Trust,* 867 F.3d 1093, 1104 (9th Cir. 2017) (citing *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014)). Plaintiffs also faced the risk, post-certification, that they would not be able to prove class-wide liability on the merits based on "pattern and practice" evidence, without being able to point to written policies that were, by themselves, contrary to law. Despite these difficulties, Plaintiffs filed and vigorously prosecuted this case for two-and-a-half years and worked diligently to develop a robust evidentiary record supporting their successful motion for class certification, before reaching the $20,000,000 settlement presented here.

**B.      Early Pleadings**

On April 6, 2016, Plaintiffs filed a complaint in the Superior Court of Alameda County. On May 25, 2016, Defendants removed the case to this Court. Notice of Removal [ECF 1]. After the originally named plaintiff could no longer perform her duties as a class representative, Plaintiffs moved for leave to amend to substitute in representative plaintiffs on July 22, 2016. [ECF 15]. On August 25, 2016, the Court granted Plaintiffs' motion for leave to amend to file the First Amended Complaint, with Named Plaintiff Robert Shaw as lead plaintiff. [ECF 34].

**C.      Early Stage Discovery**

The parties then conducted early written discovery. Konecky Decl. at ¶ 5. Plaintiffs served

several sets of requests for production of documents and targeted interrogatories seeking production of Defendants' corporate policies and procedures, organizational structure, and records of hours worked and compensation data for traveling nurses. *Id*. Defendant AMN made a substantial production of documents in response, and both Defendant AMN and Defendant Kaiser provided substantive, sworn responses to Plaintiffs' interrogatories. *Id*. Defendants also propounded interrogatories, requests for admission, and requests for production. *Id*. The Plaintiffs provided sworn responses to interrogatories and requests for admission, and produced documents regarding their employment with Defendants. *Id*.

### D. Early Resolution Efforts

In January of 2017, the parties agreed to mediate the case before David Rotman, an experienced mediator in class action cases, including complex wage and hour disputes. *Id*. at ¶ 6. The parties participated in two mediations before Mr. Rotman in January, 2017. *Id*. The case did not settle at these mediations. *Id*. Nonetheless, the mediations provided the parties an early opportunity to begin to understand the strengths and risks of their respective claims and defenses. *Id*.

### E. Further Discovery and Dispute Regarding Kaiser Discovery

Following the mediations in January of 2017, the parties engaged in further pre-certification discovery. *Id*. at ¶ 7. Plaintiffs took the deposition of Defendant AMN's corporate representative Lisa Larson, pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id*. In addition, the parties met and conferred on Defendants' responses to Plaintiffs' initial sets of written discovery, and Plaintiffs propounded additional, targeted written discovery. *Id*.

The parties also met and conferred regarding a dispute as to whether and to what extent Defendant Kaiser was obligated to produce policy and procedure documents in advance of Plaintiffs' motion for class certification, as well as the permissible scope of topics for the deposition of Defendant Kaiser's Rule 30(b)(6) corporate designee. *Id*. at ¶ 8. The parties presented their dispute to the Court in a letter brief, [ECF 67], and the Court held a discovery hearing. The Court ordered the parties to negotiate a resolution, including potential sampling of policy and procedure documents from a subset of Kaiser facilities. [ECF 68] One of Defendants' central arguments in the letter brief was that Plaintiffs were not entitled to discovery from Kaiser covering more than named Plaintiff

Shaw's location. Konecky Decl. at ¶ 8.  A driver of the parties' ultimate compromise was that Plaintiffs had identified additional proposed class representatives who had worked at Kaiser facilities other than the one where Plaintiff Shaw worked, including Plaintiffs Candy Kucharski and Jennifer Corona Teitelbaum. *Id*. Following lengthy meet and confer discussions, including in-person meetings, the parties reached a resolution providing for sampling from a subset of many of the larger Kaiser facilities. *Id*.; CMC Statement [ECF 83]. On September 25, 2017, the parties stipulated to the filing of a second amended complaint, which added as named plaintiffs Ms. Kucharski and Ms. Corona Teitelbaum, and substituted into the case the properly named defendants. [ECF 87, 92]. Thereafter, Defendant Kaiser produced hundreds of pages of documents regarding its policies and procedures, from the negotiated sample of facilities. Konecky Decl. at ¶ 8.

On September 29, 2017, the parties submitted proposals for a briefing schedule on class certification. [ECF 91]. Following a case management conference on October 6, 2017, the Court adopted a briefing schedule, setting a deadline of February 9, 2018 for Plaintiffs to file their motion for class certification. [ECF 94].

In the fall of 2017, Defendants took depositions of the named plaintiffs Robert Shaw, Candy Kucharski, and Jennifer Corona Teitelbaum. Konecky Decl. at ¶ 10. In October 2017, Plaintiffs took the deposition of Kaiser's corporate representative Kristin Mussman, pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id*. In November 2017, Plaintiffs issued a third party subpoena on Marliese Bartz, a consultant who performed work for Defendants regarding time entry processes at Kaiser facilities. *Id*. After meet and confer, Ms. Bartz produced documents and appeared for deposition. *Id*.

### F.    Third Mediation

In November 2017, the parties agreed to a third mediation before the Honorable John M. True III, another experienced and highly regarded mediator in complex wage and hour disputes. *Id*. at ¶ 11. Prior to the mediation, Defendants provided timekeeping and compensation figures that assisted Plaintiffs in assessing the value of their claims and estimating damages. *Id*. Plaintiffs also shared with Defendants a detailed mediation statement, declarations from putative class members, and a compilation of documentary evidence. *Id*. The case did not settle at this mediation. *Id*. However, the

pre-mediation exchange of information, as well as the negotiations during the mediation session itself, allowed the parties to more meaningfully vet their claims and defenses. *Id.*

### G.    Motion for Class Certification and Related Discovery

After the November 2017 mediation, Plaintiffs continued preparing their motion for class certification. *Id.* at ¶ 12.  This included working with dozens of putative class members to prepare and finalize declarations attesting to their experiences working for Defendants, which Plaintiffs submitted with the motion. *Id.*

Also in the lead-up to filing the motion for class certification, the parties met and conferred on discovery disputes arising from some of the discovery requested by Plaintiffs, including Defendant AMN's national contract with Defendant Kaiser, copies of physical timecards and forms used to claim pay for overtime and missed meal and rest periods, and targeted Electronically Stored Information (ESI). *Id.* at ¶ 13.  Following an in-person meeting in December 2017, the parties agreed to a compromise, whereby Defendant agreed to produce a subset of the requested information, and to defer some of the production until after class certification. *Id.*

The parties also retained expert witnesses for class certification. *Id.* at ¶ 14.  On December 15, 2017, Plaintiffs disclosed their expert witness for class certification, Dr. Elsie Crowninshield. *Id.* On January 15, 2018, Defendants disclosed their two expert witnesses, Robert Crandall and Dr. Suzanne Boyle. *Id.*

On February 9, 2018, Plaintiffs filed their motion for class certification. [ECF 105].  Plaintiffs submitted the declarations of 35 putative class members with the motion. *See* Compendium of Class Member Declarations, [ECF 105-3].  Thereafter, Defendants took the depositions of 8 of Plaintiffs' class member declarants and of Plaintiffs' expert witness. Konecky Decl. at ¶ 15.  Defendants submitted their opposition to Plaintiffs' motion on April 4, 2018. [ECF 118]. Defendants also submitted declarations of traveling nurses and Kaiser managers with their opposition briefing. Konecky Decl. at ¶ 15.

Thereafter, Plaintiffs took several steps to prepare their reply briefing. First, Plaintiffs took the depositions of 4 of Defendants' Kaiser manager declarants, 3 of Defendants' traveling nurse

declarants, and both of Defendants' expert witnesses, Dr. Boyle and Mr. Crandall. *Id.* at ¶ 16. Second, Plaintiffs sought additional discovery regarding the assignment e-mails and other paperwork containing language that Plaintiffs contended discouraged full reporting of overtime. *Id.*  Plaintiffs met and conferred with Defendants regarding the production of additional examples of this paperwork, and the parties agreed that Defendants would produce a sample of the assignment paperwork before Plaintiffs' deadline to submit their reply briefing. *Id.*  Third, Plaintiffs worked with a forensic accountant to submit a declaration in response to Defendants' Opposition regarding the amount of overtime paid to traveling nurses at the Kaiser facilities. *Id.*  Plaintiffs submitted their reply briefing on May 4, 2018. [ECF 123].

Also on May 4, 2018, Defendants moved to strike the expert report of Plaintiffs' expert witness, Dr. Crowninshield. [ECF 122].  The motion was fully briefed.

On May 23, 2018, Defendants made an administrative motion to file a sur-reply in response to Plaintiffs' reply briefing on the motion for class certification, and attached their sur-reply. [ECF 125]. *Id.* Plaintiffs responded to Defendants' request to file a sur-reply on May 26, 2018. [ECF 128].

A lengthy hearing on the motion for class certification was held on June 8, 2018.  In its order of July 5, 2018, the Court granted Plaintiffs' motion for class certification and struck Defendants' motion to strike the expert report of Dr. Crowninshield as untimely. [ECF 136].

### H.    *Clarke* Mediation

By way of background, the class action of *Clarke v. AMN Healthcare, Inc.*, 2:16-cv-0413-DSF-KS (C.D. Cal.), brought claims for the denial of overtime based, not on alleged off-the-clock work, but a theory that Defendant AMN did not include the value of per diem benefits in the regular rate of pay.  The *Clarke* case also alleged class claims for allegedly inaccurate wage statements under California Labor Code § 226 and waiting time penalties under Labor Code § 203. Konecky Decl. at ¶ 20  The *Clarke* class covers AMN nurses who have worked in both Kaiser and non-Kaiser facilities in California. *Id.* Thus, there is some overlap between the class members in the *Clarke* matter and the class members in the more narrowly defined class of AMN traveling nurses at Kaiser facilities in this case. *Id.*

On June 26, 2018, the Honorable Dale S. Fischer granted summary judgment for AMN on the overtime and waiting time penalty claims, but denied summary judgment on the wage statement claims under Labor Code § 226. *Id*. at ¶ 21.  The parties in *Clarke* then agreed to mediate their claims for inaccurate wage statements under Labor Code § 226, after which the *Clarke* plaintiffs would appeal the summary judgment ruling on the overtime and waiting time penalty claims. *Id*. Class Counsel in *Shaw* participated in the mediation, which was conducted by the Honorable Jay C. Gandhi at JAMS in Los Angeles on September 12, 2018.

At the close of the mediation, Judge Gandhi made a mediator's proposal for settlement of the Labor Code § 226 claims, which the parties accepted and later memorialized in a written Memorandum of Understanding signed by all parties. *Id*. at ¶ 22.  The Labor Code § 226 settlement was for $2.6 million.  Based on an evaluation of the relative class sizes and overlap between the certified classes in each case, the parties also agreed that $1.3 million of the $2.6 million settlement of the Labor Code § 226 class would be attributable to the *Shaw* case. *Id*.  Ultimately, the mediator's proposal in *Shaw* incorporated this $1.3 million into the total $20 million settlement. *Id*.

## I.        Final Mediation and Settlement

Meanwhile, after class certification in *Shaw*, the parties agreed to mediate the case once again, this time before Jeffrey A. Ross, a well-respected mediator specializing exclusively in the mediation of employment matters, and experienced in the area of wage and hour class action cases specifically. *See* Stipulation [ECF 140]. In advance of the mediation, Defendants provided Plaintiffs with timekeeping and compensation data showing the days and hours of work, payments made, and applicable rates of pay for the class members. Konecky Decl. at ¶ 23.    Plaintiffs retained the statistical consulting firm Drogin-Kakigi & Associates to conduct a damages analysis using Defendants' data and incorporating Plaintiffs' estimates as to unpaid time and noncompliant meal and rest periods. *Id*.  On October 2, 2018, the parties participated in a full-day mediation session. *Id*. The case did not settle at the mediation, but the parties made significant progress in narrowing the gap between their positions. *Id*.  At the close of the mediation, Mr. Ross made a mediator's proposal. *Id*. On October 5, 2018, the parties accepted the mediator's proposal. *Id*.  Thereafter, the parties

executed a memorandum of understanding and began preparing the long-form settlement agreement that is presented with this motion. *Id.*

## III.   KEY TERMS OF THE PROPOSED SETTLEMENT

Under the Settlement Agreement, Defendants will pay $20,000,000 to resolve this litigation ("Gross Settlement Amount"). Konecky Decl., Exh. 1 (Settlement Agreement and proposed Notice). This amount is all-inclusive, with the exception of payments to cover the employer's share of payroll taxes on any wage payments (which shall be paid separately by the Defendants). This entire amount will be disbursed pursuant to the terms of the Settlement Agreement, and <u>none</u> of it will revert to Defendants. Settlement Agreement at ¶ 8.

The key terms of the Settlement Agreement include:

- <u>Settlement Class</u>: There will be a direct monetary distribution to the Class Members. Class Members will <u>not</u> have to file claims to receive their settlement payments. *Id.* at ¶ 48.  The proposed settlement class contains approximately 8,212 members and is defined as all traveling nurses who worked in the job position(s) of Registered Nurse, Licensed Practical Nurse, or another nursing position for AMN and/or Kaiser, in one or more Kaiser facilities in California from September 11, 2013 through the date that the settlement is preliminarily approved by the Court. *Id.* at ¶ 2.[1]

- <u>Gross Settlement Amount</u>: The Gross Settlement Amount is the total sum Defendants agree to pay in exchange for Plaintiffs' and the Class members' releases and promises contained in the Settlement Agreement. *Id.* at ¶ 8.

- <u>No Reversion</u>: All settlement funds will be paid out, and none will revert to Defendants. *Id.*

- *Clarke* <u>Matter Attribution</u>: The parties agreed that $1.3 million of the $20 million settlement amount in this case is attributable to the wage statement claims of (a) Class members in the class action *Clarke v. AMN Healthcare, Inc.*, 2:16-cv-0413-DSF-KS (C.D. Cal.), who also are class members in the *Shaw* matter and (b) the class members in the *Shaw* class who are not members of the *Clarke* class. *Id.*

- <u>Class Member Release</u>: The class release is limited to the claims certified for class treatment in this case, and claims arising from or predicated on the certified claims based on the facts alleged in the Second Amended Complaint, through the date of final approval. *Id.* at ¶ 22. Only members of the Class that choose not to opt out will be subject

---

[1] Plaintiff Sharon Davis did not work at a Kaiser facility and therefore is not a class member and was not designated as a class representative. In its order granting class certification, the Court severed Ms. Davis' claims, and stayed them until resolution of the class claims. Order, [EF 136] at 15:27-28.  The parties propose that Ms. Davis' claims be resolved after final approval of the proposed class action settlement. Settlement Agreement at ¶ 46.

to the release. *Id.* There is <u>no</u> release of claims arising from or predicated on the alleged failure to include the value of per diem benefits paid in the employees' regular rates of pay when calculating the amount of overtime wages due. *Id.* In addition, this predicate for the claim for waiting time penalties under Labor Code § 203 in the *Clarke* matter is specific to the *Clarke* matter and was not resolved as part of the settlement in that case.

- <u>LWDA Payment</u>: The parties propose that $100,000 be allocated as a settlement of Plaintiffs' claims under the Private Attorney General Act of 2004 ("PAGA"), California Labor Code section 2699 *et seq.*, with 75% thereof earmarked for the California Labor Workforce Development Agency (LWDA). *Id.* at ¶ 27.

- <u>Net Settlement Amount</u>: The Net Settlement Amount is the amount that remains and that shall be paid to Settlement Class Members, after the following amounts are subtracted: (1) the fees and costs of the third party administrator charged with administering the settlement; (2) 75% of the PAGA allocation, to be paid to the California LWDA; (3) $50,000 of the Gross Settlement Amount to be put aside in the Reserve Fund for late and/or unanticipated claims; (4) any service award approved by the Court for the Class Representatives, Mr. Shaw, Ms. Kucharski, and Ms. Corona Teitelbaum, not to exceed $15,000 per representative; and (5) any attorneys' fees and costs approved by the Court. *Id.* at ¶ 10.

- <u>Appointment of Administrator</u>: The parties request that Heffler Claims Group be appointed to serve as Settlement Administrator, to undertake its best efforts to ensure that the notice is provided to the current addresses of class members (including conducting a National Change of Address (NCOA) search, skip tracing of notices returned as undeliverable, and re-mailing the notice to updated addresses) to administer payments to class members in the event the settlement is approved, to perform the tax reporting, and to be available to respond to administrative queries from class members. *Id.* at ¶¶ 28, 33.  Plaintiffs have filed a declaration of the proposed administrator describing the qualifications of Heffler Claims Group. *See* Declaration of Mark Rapazzini, Proposed Settlement Administrator ("Rapazzini (Admin) Decl.").

- <u>Direct Payments to Class Members / No Claim Forms</u>:  Class Members who do not opt out of the Settlement will <u>not</u> need to submit claims to obtain their settlement checks. Rather, settlement checks will be automatically sent to all class members for whom a valid address can be located either through Defendant's personnel records, and/or the Settlement Administrator through NCOA searches and advanced address research software. Settlement Agreement, at ¶¶ 28, 33, 48; Rapazzini (Admin) Decl. at ¶ 4. In addition, the settlement notice will be sent by e-mail to all class members for whom a valid e-mail address is provided by Defendants. Rapazzini (Admin) Decl., at ¶ 5.

- <u>Distribution Formula</u>: Each class member's individual share of the settlement will be proportional to the number of weeks the class member worked for AMN and Kaiser in a Kaiser facility in California during the applicable period, in comparison to the aggregate number of weeks all class members combined worked for AMN and Kaiser in a Kaiser facility in California during the same period. Settlement Agreement, at ¶¶ 19, 24; Konecky Decl. at ¶¶ 35-36.  The exact formula is set forth in the Settlement Agreement as well as the proposed class notice. Settlement Agreement, at ¶¶ 24.; *see also* Exhibit A to Settlement Agreement, at Sections 7-8.

- <u>Reserve Fund</u>: $50,000 of the Settlement Fund will be placed in a Reserve Fund.

Settlement Agreement at ¶¶ 16, 49. The purpose of the Reserve Fund is to have money left over to pay for any late or unexpected claims (e.g. from class members who for unanticipated reasons may not have been on the class list prepared by Defendants, or who may not have been located through the initial notice process). The Reserve Fund also will include the amount of any uncashed checks.  After expiration of a 180 day check-cashing period, the Reserve Fund will be used to pay unanticipated or late claims by eligible Class Members.  Any residual still remaining after this will be donated to Legal Aid at Work (LAAW), the parties' agreed-upon *cy pres* beneficiary. *Id*. at ¶ 49 The organization bears a substantial nexus to the interests of the absent class members because it exists to protect employees by furthering and enforcing their rights under the labor laws. Konecky Decl. at ¶ 39.

- <u>Tax Allocation</u>: The Settlement provides that settlement awards to Class Members will be allocated as follows: 1/3 shall be treated as wages, 1/3 shall be treated as penalties, and 1/3 shall be treated as interest. Settlement Agreement at ¶ 52.

- <u>Service Awards</u>: The Settlement provides that Plaintiffs will seek service payments to the Class Representatives, Mr. Shaw, Ms. Kucharski, and Ms. Corona Teitelbaum, of up to $15,000 per representative (subject to Court approval) to compensate them for their time and effort in service of the class members, and for the personal and professional risks they have taken. Settlement Agreement at ¶ 26.  Defendants have agreed not to oppose the proposed service payments. *Id*. The proposed service payments for the three representatives total $45,000, which is less than 0.23 percent of the Settlement.

- <u>Attorney's Fees and Costs</u>: Plaintiffs' attorneys' fees and costs are included in the gross settlement amount of $20,000,000. The Settlement provides that Defendants will not oppose a fee application of up to one-third of the Gross Settlement Fund. *Id*. at ¶ 25 Plaintiffs will make a separate motion for attorneys' fees and costs under Rule 23(h) on a date to be set by the Court.

- <u>Notice of Proposed Settlement</u>: The Notice sets forth in plain terms, a statement of the case, the terms of Settlement, the maximum amount of attorneys' fees, costs, and the service awards being sought, an explanation of how the settlement allocations are calculated, each class member's own credited workweeks, total class member workweeks, as well an estimated individual recovery amount that is tailored to each Class Member. *See* proposed Notice to Class, Exhibit A to Settlement Agreement (Exh. 1 to Konecky Decl.).  Class members will be notified by first class mail of the settlement, and by e-mail for class members for whom a valid e-mail address is provided by Defendants.  Settlement Agreement, at ¶ 32. Heffler Claims Group, the parties' selected Settlement Administrator, will undertake its best efforts to ensure that the notice is provided to the current addresses of class members, including conducting a national change of address search, skip tracing, and re-mailing the notice to updated addresses. *Id*. at ¶ 33.

- <u>Right to Object</u>. Class Members will have a right to object to the Settlement. The Settlement provides Class Members with 45 days from the distribution of class notice to object. *Id*. at ¶ 37.  Class Members who submit a timely Notice of Objection also will have a right to appear at the Final Approval/Fairness Hearing in order to have their objections heard by the Court. *Id*.

- <u>Right to Opt Out</u>. Class Members will have a right to exclude themselves from the

Settlement. Class Members will have 45 days from the distribution of class notice to opt-out. *Id.* at ¶ 35.  Any Class Member who requests to be excluded from the Settlement Class will not be entitled to any recovery under the Settlement and will not be bound by the terms of the Settlement, or have any right to object, appeal or comment thereon. *Id.*

- <u>Right to Challenge Defendants' Workweek Records</u>. Class Members who do not opt-out will have the opportunity, should they disagree with Defendants' records regarding the dates of employment stated on their Class Notice, to provide documentation and/or an explanation to show contrary employment dates. If there is a dispute, the Settlement Administrator will consult with the Parties to determine whether an adjustment is warranted. *Id.* at ¶ 34. The Settlement Administrator will determine the eligibility for, and the amounts of, any Individual Settlement Payments under the terms of this Agreement. *Id.* The parties agree that the Settlement Administrator's determination of the eligibility for and amount of any Individual Settlement Payment will be binding upon the Settlement Class Member and the Parties. *Id.*

## IV.  ARGUMENT

### A.   Class Certification is Appropriate for Settlement Purposes

The Court granted class certification on July 5, 2018. There are no material differences between the certified class and the settlement class.[2]  Further, as discussed in its Order granting class certification and below, the Court has already determined that the elements of Rule 23(a) and (b)(3) are satisfied here, including commonality and predominance:

Rule 23(a): With regard to numerosity, the Court determined that the class members—all of whom are identifiable from Defendants' records—are sufficiently numerous to satisfy Rule 23(a)(1). *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 259 (N.D. Cal. 2018). The Court further held that commonality was satisfied as to all of Plaintiffs' class claims because they turn upon answers to overarching common questions regarding Defendants' policies and procedures that are capable of classwide resolution. *Id.* at 268, 271. This is sufficient to meet the commonality requirement of Rule 23(a)(2). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Court further ruled

---

[2] Nor are there differences in the claims to be released and the claims certified for class treatment, with one small exception limited to a predicate theory for waiting time penalties that was not alleged in this case. Under the Settlement Agreement, there is no release of Labor Code § 203 waiting time claims arising from or predicated on the alleged failure to include the value of per diem benefits paid in the employees' regular rates of pay when calculating the amount of overtime wages due. Settlement Agreement, at ¶ 22. As discussed above, this predicate for the waiting time penalty claim under Labor Code § 203 is specific to the *Clarke* matter and was not resolved as part of the settlements in either the *Clarke* matter or in this case.

that the named Plaintiffs seeking to represent the Class satisfy the typicality requirement under Rule 23(a)(3) because they have held the same positions and assert the same types of injuries arising from the same conduct by Defendants. *Shaw*, 326 F.R.D. at 273; *see also Hanlon*, 150 F.3d at 1020 (reasoning that typicality is a permissive standard that is met so long as the representative claims "are reasonably coextensive with those of absent class members."). And, the Court previously determined that the named Plaintiffs are able to adequately represent the interests of the class based on their common experience, and that there is no evidence of any conflict of interest with other class members, for purposes of Rule 23(a)(4) adequacy. *Shaw*, 326 F.R.D. at 274. The Court similarly held that "class counsel have no conflicts of interest and [] are well-qualified to represent Plaintiffs." *Id*. at 274; *see also* Konecky Decl. at ¶ 66, Exh. 3 (describing qualifications of Class Counsel).

Rule 23(b)(3): In the previous class certification order, the Court held that common questions predominate over individual questions with regard to both Plaintiffs' overtime and meal and rest period claims. *Shaw*, 326 F.R.D. at 268, 272. As the Court observed, the claims brought by the proposed Settlement Class all arise from the same policies—including the policy of conveying to traveling nurses that Kaiser does not permit overtime and/or has a "strict" policy on overtime; Defendants' common overtime approval process; Defendants' "patient first" policy and alleged lack of a policy as to the provision of uninterrupted meal and rest breaks; and Defendants' meal period waiver policy—which apply to all members of the proposed Settlement Class. *Id*; *see also Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis."). The Court further determined that the class mechanism is superior to individual litigation of Plaintiffs' claims. *Shaw*, 326 F.R.D. at 275. Indeed, the alternative of more than 8,000 individual actions "is not realistic." *See Wren v. RGIS Inventory Specialists,* 256 F.R.D. 180, 210 (N.D. Cal. 2009). Accordingly, certification of the Settlement Class is superior to any other method of resolving this matter, because it will promote economy, expediency, and efficiency.

The Court found that all of the requirements of Rule 23(a) and (b)(3) have been met here, but did raise some questions regarding manageability, and reminded the parties that the certification decision might have to be revisited if Plaintiffs were unable to demonstrate how their claims would be established by common proof. *See Shaw*, 326 F.R.D. at 275, n.23.   However, issues regarding manageability and common proof at trial are not implicated in determining the propriety of class certification for settlement purposes. *See Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").   For all these reasons, the case should be certified for settlement purposes under Rule 23(a) and (b)(3).

**B.     Overview of the Class Action Settlement Process**

A class action settlement like the one proposed here must be approved by the Court to be effective.  *See* Fed. R. Civ. P. 23(e).  The process for court approval is comprised of three principal steps:

1.     A preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness possibly meriting final approval;

2.     Dissemination of notice of the proposed settlement to class members for comment; and

3.     A formal "fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.

*See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004). This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* Newberg on Class Actions, § 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

Plaintiffs ask the Court to take the first step in the settlement approval process and grant preliminary approval of the settlement.  Plaintiffs further request that the Court order dissemination of notice to class members, and establish a schedule for the final approval process.

**C.      The Proposed Settlement Meets the Standard for Preliminary Approval**

       1.      <u>Legal Standard for Preliminary Approval</u>

The law favors the compromise and settlement of class-action suits.  *See, e.g., Churchill Vill. L.L.C. v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation … particularly … in class action suits …" *Van Brokhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976); *see also Weeks v. Kellogg Co*., 2013 WL 6531177, at \*10 (C.D. Cal. Nov. 23, 2013) (quoting *In re Synocor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008)) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026 (internal citations and quotations omitted).  In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties … [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 1027 (internal citations omitted); Fed. R. Civ. P. 23(e).

This determination involves a balancing of several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; [and] the extent of discovery completed," among other factors. *Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010) (quoting *Class Plaintiffs*, 955 F.2d at 1291).

At the preliminary approval stage, the Court need only find that the proposed settlement is within the "range of reasonableness" such that dissemination of notice to the class, and the scheduling of a fairness hearing, are appropriate. *Newberg* § 11.25; *see also Carter v. Anderson*

*Merchandisers, LP*, 2010 WL 144067, at *4 (C.D. Cal. Jan. 7, 2010); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Preliminary approval of a proposed class action settlement is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *Eddings v. Health Net, Inc.*, 2013 WL 169895, * 2 (C.D. Cal. Jan. 16, 2013); *see also* 4 *Newberg*, § 11.25 (4th ed. 2002).  For the reasons discussed below, the instant settlement is firmly within the range of reasonableness, and easily meets the requirements for preliminary approval.

2.    The Settlement is the product of serious, informed and non-collusive negotiations

Where a settlement is the product of arms-length negotiations conducted by experienced class counsel and follows sufficient discovery, the Court begins its analysis with a presumption that the settlement is fair and reasonable.  *See Newberg* § 11.41; *Brown v. Hain Celestial Grp.*, Inc., 2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008).  At this stage, so long as the settlement falls into the range of possible approval, the presumption applies and the settlement should be preliminarily approved.  That is the case here.

First, the Settlement was reached after informed negotiations supervised by a well-respected mediator experienced in wage and hour class action cases, Jeffrey A. Ross.  Konecky Decl. at ¶ 23. The parties participated in four in-person mediations over the course of this case. *Id.* at ¶¶ 6, 11, 23. Although respectful, the negotiations were rigorous and at arms-length. *Id.*  Following the fourth mediation, Mr. Ross made a mediator's proposal, which the parties accepted three days later. *Id.* at ¶ 23.

Second, the settlement was reached after substantial discovery, depositions and motion practice.  Indeed, Counsel have investigated the factual and legal issues raised in this action, and diligently litigated the class members' claims for two-and-a-half years.  Extensive investigation, discovery and motion practice has allowed the parties to assess the strengths and weaknesses of the

claims, defenses, and the benefits of the proposed Settlement. *Id*. at ¶¶ 1-3, 5-19, 23.  For instance, Plaintiffs conducted numerous interviews of Class Members to investigate the policies and practices at issue, and submitted 35 Class Member declarations to support the motion for class certification. *Id*. at ¶ 15.  Plaintiffs also conducted depositions of Defendants' two corporate designee witnesses, four Kaiser managers, Defendants' time entry consultant, Defendants' two expert witnesses, and three traveling nurses who submitted declarations in opposition to Plaintiffs' motion for class certification. *Id*. at ¶¶ 7, 10, 16.  Defendants deposed the three named plaintiffs, eight additional traveling nurse declarants, and Plaintiffs' expert witness. *Id*. at ¶¶ 10, 15.  The parties litigated a discovery dispute, a motion to strike Plaintiffs' expert witness, and a hotly contested motion for class certification. *Id*. at ¶¶ 7-8, 12-19.  These and other proceedings in the case produced a thorough vetting (pre-settlement) of the factual and legal bases for Plaintiffs' claims and the key defenses to those claims.

Third, Class Counsel here have extensive experience litigating and settling complex wage and hour class actions. *Id*. at ¶ 66; Exhibit 3.  Accordingly, the fact that qualified and well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.  *See Hain Celestial Grp.*, 2016 WL 631880, at *5.

### 3.   The Settlement Has No Obvious Deficiencies and Does not Grant Preferential Treatment to the Class Representatives or Other Class Members

The Settlement has no obvious deficiencies, but rather provides for a non-reversionary, direct distribution to class members, without granting preferential treatment to any particular class members. Settlement Agreement, at ¶ 8.

The allocation plan for distributing the Net Settlement Fund to the class members objectively compensates class members on a pro-rata basis, according to their number of workweeks in Kaiser facilities in California during the class period. *Id*. at ¶ 24.  Specifically, each class member's individual settlement payment will be calculated by dividing the specific class member's workweeks by the aggregate number of workweeks for the class, which yields a "workweek value." *Id*.  The individual payments will then be determined by multiplying the workweek value by the Net

Settlement Amount. *Id*. In other words, the value of individual class members' claims will tend to increase proportionally with his or her length of service (e.g., a class member who works twice as long will tend to have incurred twice as much overtime that Plaintiffs allege was unpaid, and twice as many meal and rest periods that Plaintiffs allege were noncompliant).  This objective, pro-rata allocation plan does not grant preferential treatment to any class member.

Nor does the Settlement Agreement grant preferential treatment to the class representatives, who are subject to the same distribution formula as the absent class members. Subject to court approval, the class representatives would also receive service awards not to exceed $15,000 each, which Plaintiffs submit are fair and reasonable payments to recognize and compensate class representatives for the efforts and risks they took in stepping forward to assert claims against prominent employers in their specific field, and the work done on behalf of the class to prosecute the claims. *See* Section, IV.C.5, *infra*.

Class Members who do not opt out will be given the opportunity to object to the settlement and to appear at the Final Approval/Fairness Hearing in order to have their objections heard by the Court. Alternatively, Class Members will have the opportunity to opt-out of the settlement should they so desire. Settlement Agreement, at ¶ 35. The Settlement also provides the Class Members the opportunity, should they disagree with Defendants' records regarding the number of workweeks each Class Member worked, to provide documentation and/or an explanation to show contrary workweeks. *Id*., at ¶ 34. If there is a dispute, the Settlement Administrator will consult with the Parties to determine whether an adjustment is warranted. These procedural safeguards, which are explained in the Notice to the Class which is attached as Exhibit A to the Settlement Agreement (Exhibit 1 to Konecky Decl.), further support preliminary approval.

Furthermore, the Settlement Agreement reasonably establishes a reserve fund to allow for late distributions to class members who were not identified or located before the notice of the settlement is distributed.  Settlement Agreement, at ¶ 16.  After 180 days following the effective date of the settlement, any residual remaining in the reserve fund would be donated to the parties' designated *cy pres* recipient, Legal Aid At Work (LAAW). *Id*.  LAAW and its mission of strengthening civil

and workplace rights through legal aid are closely related to the goals of this case.  Plaintiffs provide

more information about LAAW in the Declaration of Counsel, submitted herewith.  *See* Konecky

Decl. at ¶ 39, Exhibit 4.[3]

4.  <u>The Settlement Falls within the Range of Possible Approval</u>

A proposed settlement is not to be measured against a hypothetical ideal result that might have

been achieved.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at * 2 (C.D. Cal. June 10,

2005) (quoting *Officers for Justice*, 688 F.2d at 625) (a proposed settlement should not "be judged

against a hypothetical or speculative measure of what might have been achieved."); *Nat'l Rural*

*Telecomm's Coop v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law

that a proposed settlement may be acceptable even though it amounts to only a fraction of the

potential recovery that might be available to the class members at trial").

The Settlement represents an excellent result for the Class.  Even after the maximum

attorneys' fees and costs that Plaintiffs may seek under the Settlement Agreement, the highest service

awards permitted under the Settlement Agreement, the PAGA allocation, the estimated costs of

settlement administration, and the modest set aside for the Reserve Fund, an estimated Net

Settlement Amount of approximately $12.918,536 would be distributed to the approximately 8,212

members of the Settlement Class.  This works out to an average share of approximately $1,570 per

person, and a little over $61 per workweek. Konecky Decl. at ¶ 40.  As discussed above, Class

Members with longer tenures will receive larger shares in proportion with their more extended terms

of service.  *Id*.  The average tenure for class members during the class period is approximately 26

weeks, which reflects the class members' status as temporary workers who have moved between

various Kaiser and non-Kaiser health care facilities, inside and outside of California, during the class

period.  Class members with a full year of qualifying workweeks during the class period will receive

over $3,000, double the average per-person recovery.  This will bring substantial relief to the Class.

---

[3] Plaintiffs' counsel Joshua Konecky is on the Board of Directors of LAAW. In his declaration, Mr. Konecky attests to the integrity and importance of LAAW's work in benefitting employees in California. Konecky Decl. at ¶ 39.

Although there is uncertainty in projecting trial-ready damages before significant post-certification merits discovery has been conducted, the $20 million recovery still compares favorably with Plaintiffs' estimates of total exposure.  As one point of comparison, the $20 million settlement amount represents 30% of the approximate $65 million outside exposure analysis for class-wide overtime and meal and rest period damages that Plaintiffs presented in mediation. Konecky Decl. at ¶ 43.  Plaintiffs calculated interest on these claims at approximately $18 million. *Id.*  Again, these figures are based on Plaintiffs' assessment of a best-case-scenario. *Id.*  To have obtained such a result at trial, Plaintiffs would have had to prove that all Class Members were denied at least one compliant meal period and at least one compliant rest period on every single shift, and that they incurred 45 minutes of unpaid overtime or double time on every shift as well, all figures that Defendants strongly disputed in settlement discussions. *Id.*[4]

Plaintiffs also could potentially have recovered additional penalties if they prevailed at trial, including waiting time penalties, wage statement penalties, and penalties pursuant to PAGA. *Id.* at ¶ 44.  For mediation, Plaintiffs calculated Defendants' exposure for waiting time penalties at approximately $5 million. *Id.*  Plaintiffs' potential recovery of waiting time penalties is limited in that the portion of the class that would be eligible for waiting time penalties (roughly 400) is relatively small in comparison to the total number of class members. This is a function of the class members' status as temporary workers who move from one assignment to the next and typically do not formally leave their employment with Defendant AMN, even when they may be working for another staffing agency or directly for a healthcare facility. *Id.*  Plaintiffs also faced the risk that Defendants would be able to defeat the waiting time claim by showing they acted in good faith. *Id.*

Plaintiffs' calculation of Defendants' outside exposure for PAGA penalties was substantial. Conceivably, Plaintiffs could have recovered as much as $167 million in PAGA penalties at trial. *Id.* at ¶ 45.  However, it is unlikely that Plaintiffs would have recovered PAGA penalties on this

---

[4] Plaintiffs' discussion of risk is not intended to be a concession on any issue, but offered to illustrate the litigation risks they faced and the reasonableness of the Settlement they achieved.  Plaintiffs explicitly reserve their position on all of their claims.

scale.  To have triggered such PAGA penalties, Plaintiffs would have had to prevail on all of their underlying claims. Under such circumstances, the Court may well have determined that awarding full PAGA penalties would have been "unjust, arbitrary and oppressive, or confiscatory" under Cal. Lab. Code § 2699(e)(2), and reduced them accordingly. *Id*.  Moreover, Plaintiffs' exposure figures for the PAGA penalties were calculated by applying the higher "subsequent" penalty rate for any violations that occurred after Plaintiffs provided notice of the PAGA claims to the LWDA and to Defendants.[5] *Id*. Defendants would have strongly challenged this approach by pointing to case law that the subsequent rate is not used until there is notice of a violation by a court or commissioner. *See, e.g., Jimenez v. Menzies Aviation, Inc.*, 2013 WL 1411228, at *4 (N.D. Cal. 2013); *Trang v. Turbine Engine Components Techs. Corp.*, 2012 WL 6618854, at *5 (C.D. Cal. Dec. 19, 2012). While Plaintiffs do not read the language of the statute this way, these authorities present a risk that the Court might.  Plaintiffs also faced the risk that the Court would follow authority precluding Plaintiffs from "stacking" penalties for the same or similar underlying violations. Konecky Decl. at ¶ 45.  In addition, the fact that this case has been certified as a class action and no claims have been compelled to arbitration reduces the practical impact and value of the PAGA claims. *Id*.

Plaintiffs estimated wage statement penalties at approximately $16 million, which assumed violations in each workweek. *Id*. at ¶ 46.  A key basis for this claim was Plaintiffs' allegation that Defendants' failure to pay all overtime due caused Plaintiffs' wage statements to show inaccurate compensation. *Id*. Thus, Plaintiffs would have likely been required to demonstrate overtime violations in each workweek to recover wage statement penalties on this scale. *Id*. Plaintiffs also would have been required to demonstrate that Defendants acted intentionally, which Defendants strongly disputed. *Id*. For all these reasons, the final settlement amount compares very favorably with Plaintiffs' estimates of Defendants' exposure.

Similar cases have settled for considerably less. For instance, an analogous California wage

---

[5] For violations of Labor Code provisions without their own penalty, such as Labor Code § 226.7, PAGA establishes civil penalties of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Labor Code § 2699(f)(2).

and hour class action also brought against Defendant AMN settled for $3 million on behalf of approximately 11,685 non-exempt healthcare professionals. *O'Sullivan v. AMN Services, LLC*, 2014 WL 11514268 (N.D. Cal. 2014) (Spero, J.) (briefing on motion for final approval describing settlement). Moreover, the projected average per-person recovery of approximately $1,570 and per-week recovery of just over $61 in the instant Settlement compares very favorably with the average per-person recovery of less than $500 and per-week recovery of less than $15 in *O'Sullivan*. *See id*. And, the *O'Sullivan* settlement was distributed on a claims-made basis. *See id*. In contrast, the Class Members in this case will not have to make claims and will receive, on average, more than three times the average individual recovery, and more than four times the per-week recovery in *O'Sullivan*. Konecky Decl. at ¶ 48.

The class-wide recovery here compares very favorably with settlement amounts in several other analogous cases in the nursing and health care fields as well. *See e.g., Galt v. Eagleville Hosp*., 310 F. Supp. 3d 483, 489 (E.D. Pa. 2018) (finally approving FLSA and state law settlement of class and collective claims brought on behalf of nurses, for approximately $725 per-person recovery); *Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2 (N.D. Cal. Oct. 18, 2013) (finally approving class action settlement of California state law wage and hour class action on behalf of nurses, with approximate per-person recovery of $595); *Saldivar v. Priority One Med. Transp., Inc*., 2011 WL 13213889, at *7 (C.D. Cal. Mar. 22, 2011) (finally approving class action settlement of wage and hour class claims of emergency medical response workers, for approximate per-person recovery of $530); *McClean v. Health Sys., Inc.*, 2015 WL 12426091, at *3 (W.D. Mo. June 1, 2015) (finally approving class action settlement of wage and hour claims on behalf of nursing home employees, for approximate per-person recovery of $286).

The potential risks attending further litigation also support preliminary approval. Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomm,* 221 F.R.D. at 526. Proceeding through Defendants' inevitable motions for decertification and partial summary

judgment, and through trial (as well as potential appeals) could add four years or more to the resolution of this case, which has already been pending for approximately two-and-a-half years. Konecky Decl. at ¶ 50.

Plaintiffs strongly believe that the Court's order granting class certification is sound and that a class action trial would not have posed manageability concerns that would warrant decertification. *Id*. at ¶ 52.   Nonetheless, decertification was a risk. As explained above, courts often deny certification of analogous "pattern and practice" cases, as opposed to those challenging facially unlawful policies.  Moreover, at the hearing on the motion for class certification, the Court had expressed some uncertainty as to whether Plaintiffs could ultimately develop the common proof necessary to establish underlying liability on their overtime and meal and rest period claims. *Id*. And, in its order granting class certification, the Court reminded the parties that it might need to revisit the class certification decision if Plaintiffs were unable to offer a reliable method for estimating on a class-wide basis the amount of unpaid overtime or noncompliant meal or rest periods. *Shaw*, 326 F.R.D. at 275, n.23.  If Plaintiffs' overtime and/or meal and rest period claims were decertified, all or many of those eligible to recover under this settlement would have lost significant compensation, and may have been left with nothing at all. Konecky Decl. at ¶ 52.

Moreover, while Plaintiffs remain confident that they would have been able to prove the underlying liability of their overtime and meal and rest period claims at trial, Plaintiffs also faced risk in this regard. *Id*. at ¶ 53. For instance, Defendants were poised to present evidence of the overtime and double time that had been reported by, and paid to Class Members. *Id*.  Plaintiffs maintain that the overtime payments made represent only a portion of the overtime actually worked, but nonetheless faced the risk that a jury would conclude otherwise. *Id*.  In addition, Defendants argued that they schedule shifts to allow completion of work within the scheduled time, and provide break relief at regular intervals. *Id*.  Plaintiffs strongly believe that Defendants' policies are insufficient to prevent off-the-clock work and ensure adequate break relief, but Defendants' arguments and testimony presented some risk. *Id*.

Furthermore, while Plaintiffs continue to assess the class claims as not being vulnerable to

summary adjudication, there was still a risk that Defendants would obtain judgment as a matter of law on a portion of Plaintiffs' claims. *Id*. at ¶ 55.  Defendants had signaled their intent to seek partial summary judgment of several of Plaintiffs' claims, including Plaintiffs' meal break, waiting time penalties, and/or Labor Code § 2810.3 claims. *See* Suppl. CMC Statement, [ECF 143], at 1:28-2:3. For example, one of Plaintiffs' theories under their meal period claim is that Defendants' alleged policy of requiring class members to waive their second meal periods pursuant to a blanket waiver— even when their shifts exceed 10 hours—is unlawful as contrary to Labor Code § 512. However, the Wage Order currently permits such waivers in a specific exception for healthcare workers. Cal. Code Regs., tit. 8, § 11050(11)(D).  Plaintiffs maintain that the Industrial Welfare Commission exceeded its authority in adopting this exception, an issue currently on appeal to the California Supreme Court. *Gerard v. Orange Coast Mem'l Med. Ctr.*, 397 P.3d 249 (Cal. 2017). Nonetheless, the *Gerard* decision remains the only appellate authority on point. Thus, Plaintiffs faced the risk of summary judgment against this blanket waiver claim, particularly if the California Supreme Court were to affirm the judgment of the *Gerard* appellate court.

If Plaintiffs established liability on a class basis, the amount of damages Plaintiffs could have potentially recovered at trial is uncertain. Konecky Decl. at ¶ 56.  Again, Defendants strongly disputed the exposure figures Plaintiffs present above, and the parties had considerable disagreement about the amount of damages Plaintiffs could recover even in a best case scenario for Plaintiffs. *Id*.

Plaintiffs also faced the prospect of further risk and delay brought on by potential appeals. *Id*. at ¶ 57. While Plaintiffs firmly maintain that the Court's rulings and legal reasoning are sound, the Court's decision on Plaintiffs' motion for class certification could have been revisited on appeal, as could any number of other decisions issued by the Court. *Id*.  This appeals process could have taken many years, and would likely require retrial of some or all of the disputed issues in the case. *Id*.

These risks, the potential for appeals, and the possibility that a recovery could be delayed for several years, pose significant concerns.  Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery to class members, the totality of relief provided under the proposed Settlement is more than adequate and well within the range of

reasonableness.

5.  The Service Awards to the Class Representatives are Fair and Reasonable

In light of the named plaintiffs' specific efforts and the very favorable impact on the litigation that resulted from those efforts, Plaintiffs will be seeking $15,000 each in service awards in a separate motion to be brought for hearing at final approval. This represents less than 0.23% of the total settlement amount and 0.35 % of the net settlement amount.  In addition, the amount is specified in the class settlement notice and Class Members will have an opportunity to comment on it.

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also Weeks*, 2013 WL 6531177, at *34.  The factors courts use in determining whether to authorize a service award include: "'1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation[;] and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.'" *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The amounts requested here are reasonable and within the range approved by courts in this Judicial District.  *See, e.g. Gaudin v. Saxon Mortgage Servs., Inc.*, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) (finding service award of $15,000 to be "fair and reasonable"); *Van Vranken*, 901 F.Supp. at 299 (approving $50,000 participation award to plaintiffs); *Villalpando v. Exel Direct Inc.*, 2016 WL 7785852, at *2 (N.D. Cal. Dec. 9, 2016) (Spero, J.) (approving $15,000 service awards for each of the three named plaintiffs).

Each of the named plaintiffs have submitted sworn declarations attesting to the time, effort and risk they undertook to prosecute this case in the best interests of the class. Declaration of Robert Shaw, at ¶¶ 9-24; Declaration of Candy Kucharski, at ¶¶ 7-22 Declaration of Jennifer Corona Teitelbaum, ¶¶ 9-24.  As will be further discussed in the upcoming motion for service awards,

Plaintiffs submit that the amount sought here is reasonable under the circumstances.

### 6. Plaintiffs are entitled to reasonable attorneys' fees and costs

Plaintiffs' counsel will be filing a separate motion for attorneys' fees and costs pursuant to Federal Rule 23(h) with their precise amount of attorneys' fees and costs requested.  Any portion of the requested fee that is not awarded to Class Counsel will remain part of the Settlement Fund and will not revert to Defendants. Settlement Agreement, at ¶ 25. Plaintiffs propose that they file the motion for attorneys' fees within one week of the mailing of the class notice to afford class members a full opportunity to review and comment on it.  *See In re: Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp*., 618 F.3d 988, 991 (9th Cir. 2010).  The proposed notice procedure gives Class Members 45 days to object to the settlement, including 37 days after Plaintiffs file their motion for attorneys' fees to object to the amount requested.

The fee motion will show that the attorneys' fees provided under the settlement are fair and reasonable under the lodestar-multiplier and percentage of the fund approaches to awarding fee requests in similar cases. To date, Plaintiffs' counsel have expended considerable time and resources on the litigation, having devoted approximately 4,160 hours for a lodestar of approximately $2.68 million. Konecky Decl. at ¶ 63.  Counsel estimates that after preparing the motions for attorneys' fees and costs, service awards, and final approval, and communicating with Class Members during the notice period, among other tasks, the combined lodestar will be over three million dollars. *Id*. Thus, the anticipated multiplier on the maximum amount of fees that Plaintiffs could seek under the terms of the Settlement is projected to be 2.25 or less. *Id*. at ¶ 64.  Plaintiffs' counsel have also incurred approximately $175,747 in out of pocket costs for depositions, court reporters, mediation fees, filing and service fees, travel expenses, and other litigation costs. *Id*. at ¶ 65.  The fees and costs requested are commensurate with the overall relief obtained and there are no indicia that the fees were negotiated at the expense of class members.

### D. The Court should order dissemination of the proposed class notice

### 1. The Settlement Agreement provides for the best method of notice practicable under the circumstances

The federal rules require that before finally approving a class settlement, "[t]he court must

direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).  Where the class is certified pursuant to Rule 23(b)(3), the notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c) (2)(B).

The parties have agreed on a notice plan that would provide class members with individual notice by first class mail.  *See* Settlement Agreement at ¶ 32; Rapazzini (Admin) Decl. at ¶ 4.  Notice will also be sent by e-mail to individuals for whom Defendants provide valid e-mail addresses. Settlement Agreement at ¶ 32; Rapazzini (Admin) Decl. at ¶ 5.  Plaintiffs request that the Court approve this method of notice as the best practicable under the circumstances. *See, e.g., Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding mailed notice to be the best notice practicable where reasonable efforts were taken to ascertain class members addresses).  Plaintiffs further request that the Court appoint Heffler Claims Group to serve as Settlement administrator.[6]

## 2.    The proposed form of notice adequately informs class members of the litigation and their rights in connection with the settlement

The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members.  Fed. R. Civ. P. 23(c)(2)(B).

---

[6] Class Counsel has worked with several settlement administration services in connection with various class action proceedings. Konecky Decl. at ¶ 37. Heffler Claims Group is one such group. *Id*.  Based on Class Counsel's experience with Heffler Claims Group in past cases, Plaintiffs proposed that Heffler Claims Group be the settlement administrator in this case. *Id*.  After consideration and due diligence, Defendants agreed to have Heffler Claims Group serve as settlement administrator. *Id*.  In the past two years, Heffler Claims Group has served as Fair Labor Standards Act collective action notice administrator for Class Counsel in *Hose, et al. v. Washington Inventory Service*, et al., Case No. 3:14-cv-02869-WQH-AGS (S.D. Cal.), and *Julian, et al. v. Swift Transportation Company, Inc*., et al, Case No. CV-16-00576-PHX-ROS (D. Ariz.). Heffler also has served as settlement administrator for three matters handled by Class Counsel's offices, but not the undersigned directly: *Asalti, et al. v. Intel Corporation*, et al., Case No. 16cv302615 (Superior Court of California, County of Santa Clara); *Guilbaud, et al. v. Sprint Nextel Corp., et al*, Case No. 13-cv-04357-VC (N.D. Cal.); and *Knapp, et al. v. Art.com, Inc., et al*, Case No. 3:16-cv-00768-WHO. *Id*.

The form of the notice proposed by the parties complies with the requirements of Rule 23 and is similar to those encouraged by the Federal Judicial Center. *See* proposed Notice to Class, Exhibit A to Settlement Agreement (Exh. 1 to Konecky Decl.). It also incorporates language suggested under the Northern District's Procedural Guidance for Class Action Settlements, updated November 1, 2018. Further, the Notice clearly and accurately informs class members of the material terms of the settlement and their rights pertaining to it, including the right to opt out from or object to the settlement. *Id.* The notice also will be tailored for each individual and provide the class member's total workweeks and a preliminary estimate of his or her settlement share in the event that all class members participate in the settlement. *Id.* Plaintiffs thus request that the Court approve the form of notice.

**E.      The Court should set a schedule for final approval**

The next steps in the settlement approval process are to notify the class of the proposed settlement, allow class members an opportunity to file any objections or opt-out, and hold a final approval hearing. Toward those ends, Plaintiffs propose the following schedule:

| | |
|---|---|
| Deadline for Defendants to provide updated class list to Settlement Administrator | 14 calendar days after entry of Preliminary Approval |
| Deadline for Settlement Administrator to mail Notice of Settlement | 30 calendar days after provision of class list to Settlement Administrator (44 days after entry of Preliminary Approval) |
| Deadline for Plaintiffs to file brief in support of attorneys' fees application | 7 calendar days after class notice is mailed (51 days after entry of Preliminary Approval) |
| Last day for Class Members to file any requests for exclusions, objections or disputed claim amounts | 45 calendar days from date notice is mailed (89 days after entry of Preliminary Approval) |
| Settlement Administrator to provide update to class counsel regarding requests for exclusion or disputed amounts | 59 calendar days from date notice mailed (104 days after entry of Preliminary Approval) |

| Deadline for the parties' replies to any class member objections: | [TO BE SET BY COURT] |
|---|---|
| Deadline for Plaintiffs to file motion for final approval of class action settlement | [TO BE SET BY COURT] |
| Deadline for Plaintiffs to file motion for service awards | [TO BE SET BY COURT] |
| Final Fairness Hearing and hearing on Plaintiff's motion for fees, costs and service awards | [TO BE SET BY COURT] |

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, conditionally certifying the Settlement Class, appointing Plaintiffs Shaw, Kucharski and Corona Teitelabum as class representatives and their attorneys as counsel for the Settlement Class, directing dissemination of the class notice, setting a briefing schedule for the motions for final approval, attorneys' fees and costs, and service awards, and scheduling a final fairness hearing.

Dated:  November 21, 2018                    /s/ Joshua G. Konecky
                                            Joshua G. Konecky
                                            SCHNEIDER WALLACE COTTRELL
                                            KONECKY WOTKYNS, LLP

                                            Attorneys for Plaintiffs

1

## <u>CERTIFICATE OF SERVICE</u>

2

     I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the

3

Court for the United States District Court, Northern District of California, by using the Court's

4

CM/ECF system on November 21, 2018.

5

     I certify that all participants in the case are registered CM/ECF users and that service will be

6

accomplished by the Court's CM/ECF system.

7

Dated: November 21, 2018

8

                              */s/ Joshua Konecky*

9

                              Joshua Konecky (SBN 182897)
                              Nathan Piller (SBN 300569)

10

                              SCHNEIDER WALLACE
                              COTTRELL KONECKY WOTKYNS LLP

11

                              2000 Powell Street, Suite 1400

12

                              Emeryville, CA 94608
                              Tel.: (415) 421-7100

13

                              Fax: (415) 421-7105
                              jkonecky@schneiderwallace.com

14

                              npiller@schneiderwallace.com

15

                              Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28